## OLIVER v. COLLINS et al.

No. 17498—Opinion Filed Dec. 21, 1926.

**1. Appeal and Error—Review—Conclusiveness of Findings in Equity Case.**

In an equitable action the findings of the trial court should be sustained unless it appears that the findings are clearly against the weight of the evidence.

**2. Fraud—Presumption Against Fraud.**

Fraud is never presumed, but must be proved by clear and satisfactory evidence, and when a transaction is fairly susceptible of two constructions, the one which will free it from the imputation of fraud will be adopted.

**3. Deeds—Validity—Mere Inadequacy of Consideration.**

Generally, mere inadequacy of consideration, in the absence of fraud or duress, is not sufficient ground to avoid a deed voluntarily and regularly executed.

(Syllabus by Pinkham, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Okfuskee County; John L. Norman, Judge.

Action by Louis Oliver against O. L. Collins and M. A. Wilder to cancel certain conveyances on the ground of fraud and misrepresentations of defendants O. L. Collins and M. A. Wilder and to quiet the title of plaintiff against the claims of said defendants by reason of said conveyances. The defendant Collins disclaimed any interest in the subject of the suit. Judgment was rendered in favor of the defendant M. A. Wilder, and plaintiff brings error. Affirmed.

Brainerd, Gotwals & Gibson, Mosier & Mosier, and Guy F. Nelson, for plaintiff in error.

Roy A. Hockensmith, for defendants in error.

Opinion by PINKHAM, C. The parties will be referred to as they appeared in the trial court.

The plaintiff in error, as plaintiff, instituted this action in the district court of Okfuskee county against the defendants in error, as defendants, to cancel a deed from the plaintiff to defendant O. L. Collins, conveying the south half of the northwest quarter and the northeast quarter of the northwest quarter of section 8, township 13 N., range 7 E., 120 acres more or less, and to cancel a deed to said land from defendant Collins to defendant M. A. Wilder, on the alleged ground of fraud and misrepresentations of defendants Collins and Wilder; and to quiet the title of plaintiff against the claims of defendants Collins and Wilder by reason of said deeds, and to quiet the title of plaintiff against the claims of defendant Roman Sarty, and that said defendants and each of them be enjoined from asserting any right, title, claim, or interest in said land, adverse to the title of plaintiff.

The defendant Collins disclaimed any interest in the land, and defendant Roman Sarty was not served with summons. The

123-2

defendant M. A. Wilder filed his answer and cross-petition, in which it was alleged that on the 10th day of April, 1925, the plaintiff made, executed, and delivered to one O. L. Collins his warranty deed whereby he conveyed the said land to the said O. L. Collins for the use and benefit of the defendant Wilder, and thereafter the said O. L. Collins made, executed, and delivered to the defendant Wilder his instrument in writing whereby he conveyed to the defendant Wilder the record title to all of the said land, and that the defendant Wilder has ever since been and now is the owner of this land in fee simple absolute; that the defendant Wilder paid to the plaintiff as consideration therefor the full sum of $4,500. Defendant specifically denies that he or the said Collins directly or indirectly made any fraudulent or false misrepresentation to the plaintiff, and further alleges that the consideration so paid to the plaintiff was and is a fair and reasonable consideration for said land, and further denies each and every other material allegation in said petition contained.

To this answer the plaintiff filed his reply. Later defendant Wilder filed an amendment to his answer and cross-petition, which amendment alleges that a part of the $4,500 paid by defendant M. A. Wilder to plaintiff as consideration for the land in controversy was a certain negotiable certificate of deposit No. 9,004, regularly issued to the order of plaintiff by the Citizens National Bank of Okmulgee, Okla., for the sum of $2,000, bearing interest at the rate of 4 per cent. annually, which said certificate was dated April 13, 1925, although it was purchased at said bank on April 11, 1925; that since this action was commenced and on, to wit. July 28, 1925, the plaintiff, having full knowledge of the entire transaction that had gone before, voluntarily appeared at said bank in person and exchanged the said certificate of deposit for a negotiable cashier's check drawn by said bank to plaintiff''s order in the sum of $2,000, and then and there collected from the said bank in cash the interest on said certificate. A copy of said certificate and copy of said cashier's check is attached to the defendant Wilder's amendment. It is further alleged that thereby plaintiff recognized, ratified, and confirmed the entire sale transaction in and upon said land and is now estopped from maintaining this action.

Plaintiff filed a trial reply to such amended answer and cross-petition.

The cause was tried before the court without the intervention of a jury, and at the close of all the evidence the court found that fraud sufficient to set aside the conveyance in question had not been established and rendered judgment in favor of the defendant M. A. Wilder.

Motion for new trial was overruled, with exceptions. From the judgment rendered and from the order of the court overruling the motion for a new trial the plaintiff has duly appealed to this court by petition in error and case-made attached.

All of the assignments of error are presented and discussed under the following proposition: "Did the defendants, Collins and Wilder, secure the deed to the land in question by false representations, or by fraud?"

It is admitted by the pleadings that the plaintiff is a one-half blood Creek Indian, and that the land in controversy was allotted to him as his surplus allotment.

The record further shows that the northwest 40 acres of plaintiff's allotment was his homestead allotment and the remaining 120 acres his surplus allotment. About 40 to 45 acres of this land was in cultivation. The land for the most part was hilly and rocky and known in that vicinity as blackjack land, worth, according to various witnesses, from $15 to $35 an acre agriculturally.

It appears that certain large oil companies had assembled a block of oil and gas leases in the vicinity of this land, and that one of these companies, the Amerada Petroleum Corporation, began a test a mile and a half west of the land involved in this action, but at the time of the trial the drilling for oil had not been started. It further appears that another oil company, the Roxana Petroleum Company, had an oil and gas lease on the 120-acre surplus land in question, which expires December 28, 1928, unless oil or gas is found thereon.

It appears that the defendant Wilder learned from the records that acreage was being blocked by some large oil companies in this general locality and that it was his understanding that the oil and gas lease upon the 120-acre surplus expired upon the majority of the allottee.

The defendant Wilder sent the defendant Collins to the plaintiff's home with a view to arrange to buy a lease on the 120-acre surplus when the plaintiff became of age. Eventually Collins met the plaintiff and Roman Sarty and one Deere upon the street in Okmulgee and they all went to Mr. Wilder's office. The defendant Wilder then of-

tered the plaintiff $100 an acre for a new oil and gas lease on this 120 acres and offered to go to Muskogee and bid $100 an acre for a departmental lease on the restricted 40-acre homestead when the plaintiff became of age.

During this conversation it developed that the plaintiff, some ten days or two weeks before he reached his majority, which, it is admitted, occurred on the 9th day of April, 1925, had left the school which he had attended at Muskogee in company with a schoolmate and did not intend to return to school until after he became of age for the reason that he did not desire to execute a certain trust deed that the superintendent of his school suggested that he ought to sign, and that his then guardian, one Murphy, wanted him to execute to them or to one of them.

It was then arranged that the defendant Collins, the plaintiff, and his schoolmate, Deere, would go away and remain until after he had attained his majority. It further appears that Roman Sarty, an uncle of the plaintiff, also accompanied the plaintiff, all of them going to various places in the state, and while the plaintiff and those with him were in the city of Sulphur on the trip home the defendant Collins called up the defendant Wilder and the latter advised Collins to come back for the reason that he had learned that the oil and gas lease on the land in controversy did not expire until December, 1928. It further appears that when the plaintiff and those with him got back to Okmulgee they went to the defendant Wilder's office, and Wilder informed them that the deal was off because the 120-acre lease did not expire with the plaintiff's majority as Wilder had previously understood.

The defendant Wilder testified that after he learned that the oil and gas lease then on the land in controversy would not terminate when the plaintiff became of age, he told the plaintiff, however, that he would be over at Muskogee the following Monday and bid $100 an acre on the departmental (homestead 40 acres) lease; that he would buy some royalty under the 120 acres (surplus) if the plaintiff cared to sell it, and that he offered the plaintiff $2,000 for an undivided half-interest; that the plaintiff declined this offer and stated that he would either sell his entire interest in the land or nothing; that he, Wilder, then offered the plaintiff $4,500 for the surplus 120 acres. This proposition was finally accepted by the plaintiff.

The record discloses that after closing this transaction the defendant and the plaintiff went to the Citizens National Bank, where the matter was explained to the cashier in detail. Wilder then paid the plaintiff a check for $480, gave him $20 in cash; and he then bought the plaintiff a certificate of deposit for $2,000, payable in six months and drawing 4 per cent. annual interest, and gave the plaintiff his note for $2,000 drawing 8 per cent. annual interest, payable in 30 days from that date.

It is admitted that the time certificate of deposit was $2,000, and that the note was paid in full afterward with interest.

On the 11th day of April, 1925, the plaintiff executed and delivered to Collins his warranty deed to the land in question, and thereafter Collins executed and delivered to the defendant Wilder his deed conveying to Wilder title to all of the said land involved in this action.

It is insisted that Collins and the defendant Wilder were instrumental in getting the plaintiff away from school, but the evidence does not sustain this contention.

It clearly appears that neither Collins nor Wilder had any knowledge of the fact that the plaintiff had absented himself from the school without the consent of the head of that institution, and there is no evidence that they knew where the plaintiff was prior to the time Collins met the plaintiff on the streets of Okmulgee, after going to the home of the plaintiff, for the purpose of inquiring as to the probability of leasing the plaintiff's land.

Furthermore, when the defendant Wilder discovered that there was an oil and gas lease upon the 120-acre surplus involved in this action, he informed the plaintiff that the deal was off and the proposition of Wilder to lease the surplus land was abandoned, so that it may be said that the act of the plaintiff in absenting himself from the school until he became of age and the fact that the defendant Wilder paid his expenses while remaining away becomes immaterial in view of the admitted fact that the purpose of his remaining away from the school was to give the defendant Wilder an opportunity to obtain an oil and gas lease on the surplus land.

It appears that the surplus land was not subject to lease for oil and gas purposes, and in this situation a new transaction was entered into, that is to say, an offer on the part of the defendant Wilder to purchase the 120 acres in fee, and the plaintiff having

attained his majority, the 120 acres was purchased for the agreed price of $4,500, the full amount of which was paid to, and received by, the plaintiff, the oil and gas lease of the Roxana Company remaining in full force and effect. The plaintiff was, on the date of the execution of the attacked deed, an adult, and capable in law of conveying his surplus land to whomsoever he chose, for any lawful consideration. and when the plaintiff accepted the consideration the deeds involved in this case were valid and binding conveyances and operated to transfer plaintiff's title to the grantee therein named.

It is true there is a conflict in the evidence as to what the defendant Wilder stated to the p'aintiff at the time of the execution of the deed. Counsel for plaintiff say in their brief that according to the testimony of witnesses the royalty value of this land at the time of the transaction was from $100 to $150 per acre, and that Wilder must have known the value, yet he, knowing it. represented to plaintiff that the land had very little oil value and that to induce the plaintiff to believe it Wilder produced a map showing some dry holes in the neighborhood of the land in question.

The plaintiff testified that Wilder produced a map showing dry holes in the vicinity of the 120 acres. This testimony of the plaintiff with respect to representations made to him by the defendant Wilder was entirely uncorroborated and clearly refuted by the defendant Wilder. The record shows that the plaintiff was a senior student at Bacone College; that he inspected the land in controversy before entering into the transaction with Wilder; and that he consulted with his uncle before making the sale; that he read, signed, and acknowledged the deed, and went to the Citizens National Bank at Okmulgee and ta'ked with the cashier with respect to the transaction; that Wilder told the cashier in the presence of the plaintiff what he, Wilder, was paying for the land—$4,500—and how he was paying for it. The plaintiff testified that after the cashier of the bank had talked with him with respect to the matter of the payment for the land he said that it was perfectly agreeable to him.

Upon this state of facts disclosed by the record we cannot say the defendant Wilder secured the conveyance of the 120 acres from the plaintiff by false representations and fraud.

"This court will weigh the evidence in a case of purely equitable cognizance, but will not reverse the same, unless it be clearly against the weight of the evidence. Brummett v. Syfert, 117 Okla. 51, 244 Pac. 772.

In the case of Owen v. United States Surety Company, 38 Okla. 123, 131 Pac. 1091, the rule repeatedly announced by this court is as follows:

"In this jurisdiction, where fraud is alleged in the procuring of a written instrument, the proof must sustain the allegations by a preponderance of the evidence so great as to overcome all opposing evidence and repel all opposing presumptions of good faith." Moore v. Adams, 26 Okla. 48, 108 Pac. 392.

It is further argued that the $4,500 paid by defendant for the 120 acres was grossly inadequate; that, aside from its agricultural value, under the evidence the value of the oil and gas royalty was from $100 to $150 an acre.

The value of this undeveloped land for oil and gas was testified to by a number of expert witnesses both for plaintiff and defendant. It is clear from a careful examination of the record before us that the finding of the court that "Whatever real value this land had at the time of the execution and delivery of the attacked conveyance, was not its oil and gas royalty value," is correct.

Witnesses on the part of the plaintiff testified to the effect that the royalty value of the 120 acres, was from $25 to $150 an acre, and they further testified to royalty sales for such sums in lands in the vicinity of the land in question. One of the plaintiff's expert witnesses, the superintendent of the land department of the Amerada Petroleum Corporation, after referring to instances within his knowledge where from $85 to $150 an acre had been paid for oil and gas royalty in the locality of the land involved herein, further stated that there was a value on this land, but so far as the witness was concerned there was not because there was a dry hole two locations from this land; that the value of oil and gas royalty is simply a gamble, and that there is no way of telling what it is worth until the drill goes down. He further stated that there is no fixed relation between the value of oil and gas royalties and the bonus usually paid.

Another of the plaintiff's witnesses having charge of the lease department of the Sinclair Oil Company, stated that as a matter of fact the value of oil and gas leases and royalties is purely speculative, and that on April 11, 1925 (the date of the deed attacked herein), there was no well drilling anywhere near this land.

Expert witnesses, who for a long period of time have been buying, owning and selling such lands, royalties, and leases, placed the value of the 120 acres at $30 to $35 an acre. The secretary and head of the land department for McMahan Oil & Gas Company expressed the opinion that this land was of the value of $30 an acre for the oil and gas rights, subject to the Roxana lease existing on the premises.

Furthermore, if the contention that the evidence showed the value of the prospective oil and gas royalty to be greatly in excess of the sum paid by Wilder to the plaintiff could be sustained, still it is a well settled rule of law in this jurisdiction that mere inadequacy of consideration, unaccompanied by fraud or duress, is insufficient of itself to set aside a deed voluntarily and regularly executed. Watashe v. Tiger, 88 Okla. 77, 211 Pac. 415; McKeever v. Carter, 53 Okla. 360, 157 Pac. 56; Barker v. Wiseman, 51 Okla. 645, 151 Pac. 1047.

We think the judgment of the trial court is not clearly against the weight of the evidence and that the same should be affirmed.

By the Court: It is so ordered.