## JANDER et al. v. McNEILL.

No. 22625.    Nov. 13, 1934.

Davidson & Williams, W. J. Otjen, and Harry O. Glasser, for plaintiffs in error.

Hudson & Hudson, for defendant in error.

WELCH, J. This is an appeal from the district court of Tulsa county. Plaintiffs in error Ida M. Brentnall, Emilie Jander, Fred R. Jander, Amon Branson, Nellie Branson, Jno. P. Liberton, Charles F. Ware, and Laura E. Ware, Mrs. Lena McNulty, M. F. Miller, trustee, Lorinda Miller, Anna Miller, Daisy O. Simmons, Mrs. Josie Niestradt, Anna L. Beeley, and Gerald J. Brentnall, as stockholders of the Anglo-American Royalties Corporation, and for and on behalf of the Anglo-American Royalties Corporation, and in their individual capacities as such, were interpleaders in a cause pending

in the trial court, as was likewise the defendant in error, N. E. McNeill. For convenience plaintiffs in error will be referred to as plaintiffs, and the defendant in error will be referred to as defendant.

On May 31, 1930, one Marie Baughman filed suit in the district court of Tulsa county against the Anglo-American Royalties Corporation and others, seeking judgment for $40,800. By amendment subsequently filed, she sought to recover only the sum of $20,200. Her suit against the corporation was based upon alleged fraudulent sales to her by the officers of the corporation of stock in such corporation, which stock was alleged to be worthless. She procured garnishment summons to issue against the Exchange National Bank of Tulsa, and thereby impounded $4,654.29 of funds on deposit in the name of the defendant corporation. In her suit she sought to recover the funds on deposit, upon the theory that they were trust funds. On or about the 20th day of June, 1930, the president of the corporation employed the defendant, McNeill, who was a practicing attorney in Tulsa, to represent the corporation in that suit, and in other suits then pending and threatened. The defendant had never before represented the corporation or any of its officers, nor did he know such officers prior to the time he was so employed. An agreement was reached whereby the defendant was employed to represent the corporation in this suit and in the various other suits which were threatened and pending, for a fee of $5,000, the same to be secured by assignment of the funds impounded by garnishment and by an assignment of a certain oil and gas lease. Accordingly, such assignments were, on the 23rd day of June, made in due form and delivered to the defendant.

The defendant filed proper pleadings in the suit on behalf of the corporation, and, at about the same time, or shortly thereafter, filed pleadings or made appearances in several other suits of a similar nature brought against the corporation. These suits were in various counties in the state.

The impounded funds were by stipulation of the parties delivered to the court clerk to be there held pending the further order or judgment of the court. In November, 1930, the original plaintiff in this suit, Marie Baughman, dismissed her cause of action with prejudice. Subsequent to such dismissal these plaintiffs intervened in the case seeking to set aside the assignment of the funds to the defendant. The defendant here, McNeill, had previously entered a plea of intervention in the cause in which he sought

to have the funds set aside to him, by virtue of the assignment which he had taken thereto at the time of his employment. Upon the issues made by the plaintiffs, and the defendant's plea of intervention, the cause was tried to the court and jury. Upon completion of the testimony of all parties, the court sustained the defendant's demurrer to the plaintiffs' evidence and rendered judgment directing the court clerk to pay such funds to McNeill, the defendant here.

An examination of plaintiffs' brief indicates that the only complaint here made is that the trial court erred in failing to find that the defendant had been guilty of fraudulent conduct. We quote from defendant's brief the only portion thereof which indicates an assignment of error as follows:

"The complained-of position of the judgment of the trial court is evidenced as follows:

"After considering the evidence and the argument of counsel on the demurrer to the evidence, the court is of the opinion that there is not a scintilla of evidence connecting the intervener, McNeill, with the frauds committed by McIntire and others, and the demurrer is sustained."

Plaintiffs' brief is somewhat vague as to just what act of fraud, as alleged in the pleadings, they contend has been substantiated by the evidence. In fact their brief fails to contain any portion of the pleadings, nor does it contain an exact statement of the issues made thereby. The defendant has filed a motion suggesting a dismissal of the plea for failure of the plaintiffs to comply with the rules of this court in the matter of briefing their case, and indeed there is grave doubt in our mind whether the same should not be sustained, particularly in view of the difficulty of ascertaining from the brief the exact questions sought to be raised. Inasmuch as the brief deals solely with the question of whether or not the defendant practiced fraud in the matter of obtaining the assignment, we have determined to examine the record on that point.

We take it that the references to fraud in plaintiffs' brief would necessarily be directed to such fraud as is alleged in the pleadings. From an examination of the record, we observe that the fraud as alleged against the defendant, McNeill, is, in substance, as follows: That on account of mismanagement and fraud of the officers, the corporation became and was wholly insolvent at the time of the assignment to McNeill; that the officers had no right or authority to execute and deliver the assignment; that the fraudulent and corrupt pur-

pose of making the assignment was to use corporate funds to pay the attorney's fee for the defense of the officers in criminal actions then pending or anticipated; that the assignment was accepted by the defendant, McNeill, with knowledge of these facts; that up to that time defendant had rendered no services as attorney for the corporation, nor any since that time; that all services rendered by the defendant have been rendered as attorney for the officers of the corporation in their individual capacities, and in his own behalf as claimant to the funds in controversy; and, referring to a civil action in the district court of Garfield county, Okla., it is alleged that the services there rendered by defendant as attorney were rendered in behalf of the defendant himself and the officers of the corporation for their individual interest, and to the detriment and injury of the corporation, its stockholders and creditors; that there was no consideration for said assignment to the defendant, McNeill, and that if there ever was any consideration therefor, it has wholly failed; and that said assignment was and is fraudulent, illegal, and void.

The plaintiffs argue at length that the evidence discloses that the Anglo-American Royalties Corporation was created, organized, and operated as a gigantic fraud in which most of the million dollar capital stock was issued to three or four individuals in return for property consisting mostly of oil and gas leases and royalties of far less value than the face value of the stock so issued. These individuals, in turn, according to the evidence, sold the stock to various persons, including the original plaintiff in this suit, intervening plaintiffs in this cause, and numerous other persons. In such sale of the stock, however, it appears that the same was not offered with these individuals in the capacity of officers of the Anglo-American Royalties Corporation, but was sold by them as individuals. The record contains much evidence that in these transactions the parties engaging therein were guilty of gross fraud. However, that evidence could not be material to the issues presented on this appeal, unless the defendant, McNeill, be connected therewith by the evidence.

The evidence here is not disputed that McNeill was in no way connected with the organization of the corporation, nor with its management, and there is no evidence of any character that he was connected with any of the stock transactions, and it is further shown, without any dispute, that McNeill was not acquainted with any of the officers of the corporation, or any of the persons dealing in the stock transactions prior to the time of his employment as attorney, after Marie Baughman brought this suit.

The plaintiffs in their brief deal at considerable length with the defendant's activity after his employment, and criticized his activity in investigating certain criminal proceedings filed against certain officers of the corporation, and in discussing with plaintiffs' attorney certain details of the original plaintiff's suit. It appears that about the time the defendant was employed by the corporation in this cause he made a trip to Kingfisher and Enid, and there discussed these matters with various attorneys.

We are unable to see the materiality of this evidence here, unless it be for the purpose of showing that McNeill thereby obtained information as to the true financial condition of the corporation, thus substantiating the plaintiffs' charge that the defendant was aware that the corporation was insolvent at the time of the taking of the assignments as security for his fee. Mr. Glasser, who was attorney for Marie Baughman, testified that at that time he advised McNeill that his investigation had disclosed that the corporation was practically without assets.

It is urged in plaintiffs' brief that the defendant, McNeill, "possessed himself of an assignment for 100 per cent. of the company's cash and 100 per cent. of its properties of any value whatsoever," which is urged as being against the public policy of the state, as expressed in its limitation of attorneys' fees to not more than 50 per cent. of recovery, citing section 4101, C. O. S. 1921 (4205, O. S. 1931). That section of the statute dealing with contingent fees clearly has no application here, nor is the premise of fact correct as to the percentage of property covered by the assignment.

The petition in intervention filed by these plaintiffs on November 20, 1930, some five months after McNeill took the assignment in question, alleges that the properties acquired by the corporation amounted to some $21,000, and these properties appear to have been acquired within a period of a few months of the time the assignments were taken, and the plaintiffs, upon trial of the issues here, introduced evidence as to the value of properties belonging to the corporation, and this evidence was to the effect that the value of these properties, exclusive of the funds on deposit in the Exchange National Bank, and exclusive of certain oil

and gas leases and royalties owned by the corporation in Texas, on which no value was placed, was approximately $23,000. The record and the briefs would indicate that these properties were still owned by the corporation at the time of this trial. Such being the case, we do not agree with plaintiffs' contention that the defendant here sought to, or did consume all of the assets of the corporation as his fee. We do not agree with the apparent contention that such evidence is sufficient to constitute a showing of fraud on the part of the defendant in fixing his fee and in taking the assignment as security therefor.

Plaintiffs next deal with the circumstances surrounding the dismissal of this suit by the plaintiff, Marie Baughman, and the improper practice of various persons in procuring her to dismiss the same. We agree that the circumstances surrounding this dismissal and the action taken in connection therewith by various persons were highly improper. We are of the opinion, however, that the evidence here does not connect the defendant, McNeill, with improper conduct in that regard. Furthermore, we cannot see that this question is of importance in determining the controversy here, for, though the dismissal by Marie Baughman was obtained by wrongful methods, such dismissal inured to the benefit of these plaintiffs, inasmuch as her rights were adverse to their rights. Had she prevailed in her suit, she would have obtained the funds here in controversy as her own property, as well as procured a judgment against the corporation, all of which would have been opposed to the interests of the plaintiffs here.

Plaintiffs' brief contains the argument that McNeill's activity as an attorney in all of these matters has been directed entirely, or nearly so, toward representing his own interest in endeavoring to procure the funds here in controversy to apply on his fee. It may be said in connection therewith that any activity on his part to that end would certainly be for the benefit of the corporation and the stockholders, for any property or funds saved to be used in payment of his fee would be saved to the corporation for the purpose of liquidating its liability to its attorney for his fee. It is stipulated in the record, however, that the defendant did represent the corporation in the defense of its pending suits. The record indicates that in all of the numerous cases filed against the corporation the defendant, as the corporation's attorney, had taken all of the necessary legal steps toward protection of its rights, and that he had defended and was still defending the corporation in some

eight or ten suits involving many thousands of dollars. We, therefore, conclude that the evidence does not substantiate the claim that the action taken by the defendant in these matters was for his own personal interest and the interest of the accused officers of the corporation, and we find nothing from the evidence from which it might be reasonably concluded that the fee charged was in any manner intended to be paid to the defendant as a fee for representing the officers of the corporation in their criminal cases.

As already pointed out herein, we have considered this cause only upon the point raised by plaintiffs wherein they seek to establish their allegations of fraud as to McNeill. Plaintiffs introduced no evidence touching the question of the value of defendant's services, and of the reasonableness of the fee charged, except such as may be reflected in our previous discussion of the evidence herein. We have not been favored in plaintiffs' brief with citations of authorities which might govern the issues as presented here, and we know of no authorities which would lead us to conclude from the facts as presented by the plaintiffs that the defendant has been guilty of fraud, which would justify this court in interfering with the agreement reached between the corporation, through its officers, and the defendant as its attorney, or to vitiate the assignment of the corporation's property as security for the payment of his fee.

Fraud is never presumed, but must be shown by evidence that is clear and satisfactory or convincing. Ely Walker Dry Goods Co. v. Smith, 69 Okla. 261, 160 P. 898; Oliver v. Collins, 123 Okla. 33, 251 P. 729; Smith v. Stricker Radio & Music Shoppe, 123 Okla. 95, 251 P. 1015.

Fraud cannot be inferred from facts which are or may be consistent with honesty of purpose. Davis v. Howe, 99 Okla. 118, 226 P. 316.

Members of the bar are often called upon to represent persons accused of wrongdoing. Such attorney is not chargeable with his client's guilt when his only activity is consistent with his duty as a member of the bar of this state, and as attorney for the particular client.

The evidence goes into some detail as to the various activities of the defendant, McNeill, in his litigation. There is not anything shown which would be inconsistent with the duties of a diligent, faithful, upright attorney.

We, therefore, agree with the conclusion of the trial court in sustaining the demur-

rer to the evidence, and the judgment appealed from is affirmed.

RILEY, C. J., and SWINDALL, OSBORN, BAYLESS, and BUSBY, JJ., concur. CULLISON, V. C. J., and ANDREWS, J., absent. McNEILL, J., not participating.