## JOHNSON v. CALDWELL.

No. 26792.　May 25, 1937.

Rehearing Denied July 13, 1937.

Application for Leave to File Second Petition for Rehearing Denied Sept. 21, 1937.

Hollis Arnett, for plaintiff in error.

W. T. Jeter, for defendant in error.

PER CURIAM. In effect, this is an action for deceit to recover the sum of $3,500 as damages claimed by plaintiff for the alleged fraudulent acts of the defendant. For convenience the parties will be designated as they appeared in the court below.

Mrs. Caldwell, plaintiff, had on deposit in a Bank in Mangum, Okla., the sum of $3,500. Defendant, Johnson, was a druggist in Mangum and plaintiff traded at his store. Defendant had invested $72,000 in the Century Building & Loan Association of Dallas, Tex., $42,000 in stock of the Amarillo Building & Loan Association, and $15,000 in stock of the Chieftain Royalty Company. He acquired knowledge that plaintiff kept such a deposit, and in a number of interviews with her told her of his investments and agreed to invest her money. He advised her that his dividends came in regularly, assured her that his investments were good, safe, and profitable, and exhibited to her various statements of the Century Building & Loan Association based on audits made by the State Banking Department of Texas, showing that association to be a solvent and going concern. He made a similar showing to her relative to the other two concerns, and told her that all of them were paying regular and satisfactory dividends.

Concerning her deposit he called her attention to the fact that banks were failing all over the country at that time, which was during the years 1928 and 1929; that the bank where she kept her deposit might fail and her money be lost; that a deposit in a bank did not produce the amount of income it would produce if invested in some of his stocks; that her deposit was unsafe and if invested in such stocks would be safer than on deposit in any bank. All the information which he gave her was in general conversations in his store, and in response to her inquiry as to how she might make a better investment of her money to assure her of its safety. She had confidence in him and considered him one of the best "financial" men in the city.

From time to time she withdrew her money from the bank, took it to the defendant and permitted him to invest it in some of said stocks, delivering her checks to him, and receiving from him, or direct from the association issuing it, stock in the proper amount.

Johnson had been elected vice president of the Century Building & Loan Association; he did not assume any part in its management and had no connection with its operation or general business affairs, and was not conversant with the details thereof. He was elected because he was a large investor. Living some 300 miles from its office, he knew no more about its affairs than any other stockholder. He made sales of stock in all of these companies from time to time; on some sales he received a nominal commission and on others none. He was not a designated stock salesman or broker, but made sales merely because of his interest in the success of each of said concerns.

After Mrs. Caldwell had placed her money in stocks through defendant, $1,900 in the Amarillo Building & Loan Association, $600 in the Chieftain Royalty Company, and $1,000 in the Century Building & Loan Association of Dallas, Johnson invested $37,000 in the stock of the Century Building & Loan Association and $36,000 in the stocks of the other two companies. This was done during the two years immediately following the transactions of which plaintiff complains.

More than four years subsequent to Mrs. Caldwell's investments, the Banking Department of the state of Texas, whose duty it was to audit building and loan associations in that state, ascertained that through manipulations and defalcations, which were not reflected in the regular books and records of the association, the president of said association, one Frank A. Loftus, had plundered its treasury; that his abstractions had been going on since the beginning of business, and that he maintained a duplicate, unlawful and independent record of his own; and the regular books and accounts of the concern were so kept that they reflected a solvent and dividend-paying business. The fact of insolvency could not have been ascertained, and was not ascertainable from the association's records. This condition was unknown to the secretary-treasurer, and the cashier, who officed with the president, and was unknown to all officers and stockholders of the corporation, except the defaulting president. All reports of the condition of the association were based by the Banking Department's audits on the books and accounts of the association. No suspicions had been aroused to cause an independent verification of the authenticity of the records of the association and of the various items reflected therein until immediately prior to July, 1933, and the result of the independent investigations then made caused the said president to become a fugitive from justice, and his peculations to be discovered. These disclosed that the association was insolvent, and had been so from the beginning of its business.

But the evidence wholly fails to show that Johnson knew or had reason to suspect or investigate this condition. His own acts are sufficient proof of his good faith and confidence in this association. In all his dealings with Mrs. Caldwell, no evidence appears to indicate that he made any statements to her which he did not have good reason to believe were true relative to any of the stocks involved. He made strong representations to her that all of it was good. This was his own experience and he was justified therein.

As to the Chieftain Royalty Company and the Amarillo Building & Loan Association, no evidence appears in the record respecting the condition of either of them, or whether Mrs. Caldwell lost or gained by investment therein. So far as this record is concerned, she could have made enough profit out of either of them to offset her losses in the Century. It cannot be assumed that because she lost in one she lost in all. There is no evidence of fraud or deceit on the part of defendant relating to her purchase of said stocks. These therefore, so far as this appeal is concerned, pass out of the case.

To constitute actionable fraud it must appear: (1) That defendant made a material representation; (2) that is was false; (3) that he made it when he knew it was false; or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; (6) that he thereby suffered injury.

All of the above facts must be proven with a reasonable degree of certainty, and all of them must be found to exist, as the absence of any one of them would be fatal to a recovery. Wingate v. Render, 58 Okla. 656, 160 P. 614; Henry v. Collier, 69 Okla. 24, 169 P. 636; Cooper v. Gibson, 69 Okla. 105, 170 P. 220; Chicago, R. I. & P. Ry. Co. v. Penix, 61 Okla. 4, 159 P. 1141.

The record is silent as to any statement of Johnson to Mrs. Caldwell relative to the stock in question which he knew to be false; or that he kept to himself information which he should in good faith have imparted; or that he recklessly made statements regarding said stocks without any knowledge of their truth and in the absence of a reasonable basis for believing them to be true. The direct opposite appears. Indubitably he believed implicitly all that he told her, for he acted thereon during the two years subsequent to his dealing with her, by placing, in addition to his former investments, the sum of $73,000 in these various stocks. This speaks in thundertones of his lack of suspicion, and his unlimited confidence in all of these stocks as a safe and profitable investment, and clears him of fraud in advising her to put her $3,500 into said stocks.

The fact that he was vice president of the Century Building & Loan Association without official duties or activities does not militate against him or charge him per se with knowledge of facts unobtainable by him, wholly unknown to him, to the active officers of the corporation other than the defaulting president, to the other stockholders or to the auditors of the State Banking Department of Texas. Some proof of a fraudulent intent to deceive or defraud Mrs. Caldwell, to so charge him, must affirmatively appear; nothing appears which can be so construed.

It is contended that the trial court erred in treating defendant's representations about the bank as material, and the rule is invoked that representations relied upon for recovery in an action for fraud must be relevant to the transaction in which the loss complained about has been sustained, and must be as to some subject material to the transaction resulting in the loss, as distinguished from matter merely collateral thereto and which does not constitute an essential element thereof. Since we hold there was no evidence to take the case to the jury, it is not necessary to pass upon this point.

This cause was tried to a jury. It is the rule that fraud is a question of fact to be determined by the jury, but there must appear some reasonable proof of fraudulent intent. The mere fact that fraud is claimed will not justify the submission of that issue unless facts are produced from which an irresistible deduction of fraud reasonably arises. Fraud may not be presumed by the jury from circumstances; it must arise as does any other issue of fact from a preponderance of all the evidence. Deceit, fraud, and fraudulent intent arise from acts and conduct inharmonious with good faith and must emanate from clear and convincing proof. A chancellor is given a somewhat wider latitude in certain cases in equity where he may assume that fraud was intended as the consequence of the action of the parties charged, but even in such cases he must find convincing facts or circumstances which in reason cannot be harmonized with good faith. Pevehouse v. Adams, 52 Okla. 495, 153 P. 65; Young v. Blackert, 51 Okla. 285, 151 P. 1057; Ely Walker D. G. Co. v. Smith, 69 Okla. 661, 160 P. 898; Jander v. McNeill, 169 Okla. 433, 43 P. (2d) 1022; Clark v. Lockstone et al., 170 Okla. 316, 39 P. (2d) 971; Lester v. Mahan (Ala.) 60 Am. Dec. 531-532.

It is unnecessary to examine the instructions of the court. The record is so devoid of proof tending to establish fraud by the defendant in his dealings with Mrs. Caldwell that it was error to have submitted the case to the jury. The demurrer to the evidence should have been sustained.

From the condition of the record it is apparent that fraud cannot be imputed to the defendant upon any theory. It was the duty of plaintiff to offer all the evidence at her command upon the trial below, and it must be inferred that she performed that duty. A continuance of this litigation, therefore, would be superflous and would avail plaintiff nothing. Baily v. Griggs, 174 Okla. 90, 49 P. (2d) 695.

The judgment is reversed, with instructions to the lower court to dismiss the cause.

The Supreme Court acknowledges the aid of Attorneys O. H. Graves, E. R. Jones,

and J. C. Stone in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Graves and approved by Mr. Jones and Mr. Stone, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

OSBORN, C. J., and WELCH, PHELPS, CORN, and HURST, JJ., concur.