990 F.2d 1169
 20 UCC Rep.Serv.2d 729
 Otto ROBERTS; Suda Roberts; and Woodward Livestock
Auction, Inc., a corporation, Plaintiffs-Appellants,
v.
WELLS FARGO AG CREDIT CORP., a California corporation;
Wells Fargo & Company, a Delaware corporation;
and Wells Fargo Bank, N.A., a National
Banking Association,
Defendants-Appellees.
 No. 92-6142.
 United States Court of Appeals,
Tenth Circuit.
 April 12, 1993.
 
 Duke Halley (David B. Christian, with him on the briefs), Halley & Christian, Woodward, OK, for plaintiffs-appellants.
 C. William Threlkeld (Ann M. Threlkeld and Brenda K. Penland, with him on the brief), Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, OK, for defendants-appellees.
 Before MOORE, Circuit Judge, GODBOLD, Senior Circuit Judge,* and ANDERSON, Circuit Judge.
 JOHN P. MOORE, Circuit Judge.
 
 
 1
 Plaintiffs Otto Roberts, Suda Roberts, and Woodward Livestock Auction, Inc., appeal the summary judgment dismissal of their action against Wells Fargo AG Credit Corp. for breach of contract, fraud, breach of good faith, and economic duress. We affirm.
 
 
 2
 On March 28, 1985, the parties executed a credit agreement wherein Wells Fargo agreed to loan plaintiffs approximately $1.5 million over a five-year period (term loan/note) and to provide a one-year operating loan (line of credit loan/note). In 1986 and 1987, the line of credit note was renewed under substantially the same terms as the original note. According to plaintiffs, in 1987, Wells Fargo orally promised to unconditionally renew the line of credit note until the term loan matured.[1] However, in 1988, Wells Fargo refused to renew the note unless plaintiffs withdrew additional funds from their line of credit and applied those funds to the balance owing on the term note. Though plaintiffs declined the conditional renewal offer, the parties later agreed to a six-month line of credit extension.
 
 
 3
 After repaying the line of credit loan, plaintiffs brought the instant action, seeking compensatory and punitive damages. Wells Fargo moved for summary judgment on the ground that its alleged oral promise to renew the line of credit note was unenforceable under Oklahoma contract law. The district court granted the motion, and plaintiffs appealed.
 
 
 4
 The central issue in this case is whether Wells Fargo was legally obligated to renew the line of credit note during the five-year period coinciding with the term loan. The district court determined the bank was under no such obligation. In dismissing plaintiffs' breach of contract claim, the court expressly rejected their contention that the loan documents, when read together, were ambiguous. Indeed, after "carefully review[ing] all of the loan documents," the court could "find no such ambiguity." Because the term loan and line of credit loan were "two separate and distinct transactions," the court found any difference in maturity dates did "not amount to an internal inconsistency" or "create an ambiguity." Consequently, the line of credit note could not be "made ambiguous by any of the other agreements executed by the parties." Thus, the court concluded Wells Fargo's alleged oral promise to renew the line of credit note was barred by the parol evidence rule.
 
 
 5
 On appeal, plaintiffs advance three arguments against the dismissal of their breach of contract claim. First, noting the parol evidence rule only applies to oral statements which precede or accompany a written agreement, plaintiffs maintain Wells Fargo's oral promise to renew was enforceable because the promise was made after the 1987 line of credit renewal. Second, plaintiffs claim the oral promise was "a binding commitment according to [Wells Fargo's] own policy manual."[2] Finally, they contend the maturity date language in the line of credit note is not controlling because the note was part of a larger transaction in which Wells Fargo "agreed to provide long term financing upon [plaintiffs'] promise to pay the debt and to borrow operations financing from the same source." According to plaintiffs, because the parties' written documents contain conflicting maturity dates, Wells Fargo's oral promise should have been admissible to resolve "apparent ambiguities regarding the availability of operating funds."
 
 
 6
 "This court conducts a de novo review of a district court's ruling on summary judgment," United Bank & Trust Co. v. Kansas Bankers Sur. Co., 901 F.2d 1520, 1522 (10th Cir.1990) (citation omitted), applying "the same legal standard used by the district court under Fed.R.Civ.P. 56(c)." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir.1990) (citation omitted). Though "we must view the record in a light most favorable to the parties opposing the motion for summary judgment," Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991) (citation omitted), "[s]ummary judgement is appropriate when there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991).
 
 
 7
 Under Oklahoma law, "the well-established general rule is that where the parties to a contract have deliberately put their engagement in writing, '... all parol evidence of prior or contemporaneous conversations or declarations tending to substitute a new and different contract for the one evidenced by the writing is incompetent.' " Wilson v. Mid-Continent Casualty Co., 510 P.2d 274, 276 (Okla.1973) (quoting 30 Am.Jur.2d Evidence § 1016, at 149 (1967) (footnote citations omitted)). Therefore, "[t]he execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument." Okla.Stat. tit. 15, § 137 (1983). Accordingly, "where a contract is complete in itself and, as viewed in its entirety, is unambiguous, its language is the only legitimate evidence of what the parties intended." Mercury Inv. Co. v. F.W. Woolworth Co., 706 P.2d 523, 529 (Okla.1985).
 
 
 8
 Plaintiffs suggest Wells Fargo's alleged oral promise to renew is not parol evidence or, alternately, the promise is admissible to resolve latent ambiguity in the parties' written agreements. We disagree. First, the parol evidence rule applies because the alleged promise was not incorporated into the parties' written documents. Second, we reject plaintiffs' contention that the written instruments are ambiguous. The 1987 line of credit renewal note expressly provided that "[a]nything herein to the contrary notwithstanding, all principal and interest remaining unpaid on April 30, 1988 ("Maturity Date"), shall be immediately due and payable." That note also gave Wells Fargo the option, "in its sole discretion and without any obligation to do so," to extend or renew the note. The 1988 six-month extension contained the same unambiguous maturity date language found in the 1987 renewal note. The extension note further indicated Wells Fargo did "not intend to extend further financing" to plaintiffs once the note matured. Because "Oklahoma law does not permit courts to re-write a contract for the parties," we cannot make a better contract for plaintiffs than that which they saw fit to enter into. Williams Petroleum Co. v. Midland Coops., Inc., 539 F.2d 694, 696 (10th Cir.1976) (citation omitted). Thus, we conclude the district court properly dismissed plaintiffs' breach of contract claim.
 
 
 9
 In opposing summary judgment on their fraud claim, plaintiffs presented evidence of the parties' oral agreement to renew the line of credit note over the course of the term loan, including an admission by the bank's president that plaintiffs' expectation of annual renewal was realistic "going into" the transaction. The district court found "[t]his evidence, when viewed in the light most favorable to the Plaintiffs, support[ed] the inference that Wells Fargo promised or agreed to renew the Plaintiffs' line of credit loan annually." The court further determined "[a] reasonable factfinder could conclude that Wells Fargo broke [this promise] when it refused to renew the [line of credit] note absent certain conditions." Despite these findings, however, the court reasoned that Wells Fargo's broken promise could not support a fraud claim without evidence that the bank also intended to breach the promise when it was made.
 
 
 10
 Turning to the issue of fraudulent intent, the district court first noted that the bank's failure to incorporate the oral promise into the written loan documents did not demonstrate an intent to renege on the promise. The court then observed that plaintiffs themselves had admitted "the parties' original intentions would have been carried out had there not been a change within the [D]efendant's organization."[3] Finding "Wells Fargo's new management simply made a business decision to stop making annual renewals of the Plaintiffs' line of credit note without some reduction of the principal balance of the term loan," the court concluded plaintiffs failed to establish that Wells Fargo "fraudulently intended" to break its promise to renew at the time the promise was made.
 
 
 11
 On appeal, plaintiffs contend the district court's finding that Wells Fargo breached an oral promise to renew precluded dismissal of their fraud claim. According to plaintiffs, "a reasonable jury" could have found "actual fraud" based on Wells Fargo's hidden intention to require prepayment of the term note and thus prematurely terminate the parties' financial relationship.
 
 
 12
 "The essential elements of fraud are well settled." Varn v. Maloney, 516 P.2d 1328, 1332 (Okla.1973). The person alleging fraud "must show a material false representation, made with knowledge of its falsity or recklessly without knowledge as to its truth or falsity, as a positive assertion, with the intention that it be acted upon by another, who does act in reliance thereon, to his injury." Id. (citations omitted); see also Okla.Stat. tit. 15, § 58 (1983).
 
 
 13
 As a general rule, "for a false representation to be the basis of fraud, such representation must be relative to existing facts or those which previously existed, and not as to promises as to future acts." Citation Co. Realtors, Inc. v. Lyon, 610 P.2d 788, 790 (Okla.1980). An exception to the rule exists, however, "where the promise to act in the future is accompanied by an intention not to perform and the promise is made with the intent to deceive the promisee into acting where he otherwise would not have done so." Id. Therefore, "[t]he gist of the rule is not the breach of promise but the fraudulent intent of the promisor at the time the pledge is made not to perform the promise so made and thereby deceive the promisee." Id. (citation omitted) (emphasis added).
 
 
 14
 "There must be evidence of each element of fraud presented before the issue may be properly submitted to the jury." Silk v. Phillips Petroleum Co., 760 P.2d 174, 177 (Okla.1988) (citation omitted). Consequently, only "when fraud is properly alleged by plaintiff and denied by the defendant" does "the question become[ ] one for the trier of facts, if there is conflicting evidence." Lester v. Sparks, 583 P.2d 1097, 1100-01 (Okla.1978) (footnote citations omitted) (emphasis added). Thus, because "[f]raud is never presumed," Tice v. Tice, 672 P.2d 1168, 1171 (Okla.1983) (footnote citation omitted), the mere allegation of fraud alone "will not justify the submission of that issue [to the jury] unless facts are produced from which an irresistible deduction of fraud reasonably arises. " Silk, 760 P.2d at 177 (quoting Johnson v. Caldwell, 180 Okl. 470, 71 P.2d 620, 623 (1937)).
 
 
 15
 Here, although plaintiffs allege fraud, they have presented no evidence that Wells Fargo's promise to perform was accompanied by an intent not to do so. Indeed, "[t]he only proof in this record upon which we can predicate an intent not to keep the promises made is the fact that such promises were not kept." Smith v. Roederer, 516 P.2d 257, 261 (Okla.1973) (quoting Downtown Chevrolet Co. v. Niccum, 180 Okl. 616, 71 P.2d 957, 960 (1937)). Dismissal of plaintiffs' fraud claim was appropriate because breach of a contract alone is not proof of fraud.[4]
 
 
 16
 In dismissing plaintiffs' breach of good faith claim, the district court determined that Okla.Stat. tit. 12A, § 1-208 (1963),[5] which imposes a duty of good faith upon creditors who accelerate a note under an "acceleration at will" or "insecurity" clause, did not apply to this case. Specifically, the court found Wells Fargo did not accelerate or require additional collateral on the term note. Nor did the bank accelerate the line of credit note, which had reached maturity, or rely on any acceleration clause in refusing to unconditionally renew that note. To the contrary, the court concluded Wells Fargo "merely declined to renew another [line of credit] note unless the Plaintiffs agreed to reduce the principal owing on the term note." The court thus reasoned plaintiffs' bad faith acceleration claim was "a transparent attempt to enforce an oral agreement which [was] otherwise unenforceable under the parol evidence rule."
 
 
 17
 Though conceding no cases support their bad faith acceleration claim, plaintiffs nonetheless contend Wells Fargo's conditional renewal offer constituted an acceleration under § 1-208. Noting Wells Fargo's undisputed intent to reduce the outstanding balance on the term note, plaintiffs assert "[t]he fact that acceleration was done surreptitiously does not take it out of the restrictions imposed by Section 1-208."
 
 
 18
 Essentially, plaintiffs seek to expand § 1-208 to include "conditional" or "potential" acceleration. Broadening the acceleration statute to embrace the circumstances of this case, however, would contravene both the express language of the statute and the terms of the written agreements governing the parties' financial relationship. Furthermore, even if the acceleration statute were applicable to this case, plaintiffs' claim would fail because Wells Fargo's actions were motivated by legitimate business concerns. Therefore, we hold Wells Fargo did not accelerate repayment of plaintiffs' loans.
 
 
 19
 We also reject plaintiffs' related contention that Wells Fargo breached an implied duty of good faith. As a general rule, "Oklahoma law does not extend the tort of bad faith breach [of contract] to the commercial lending setting." Coble v. Bowers, 809 P.2d 69, 72 (Okla.Ct.App.1990)[6] (citation omitted). Indeed, "[t]o impose tort liability on a bank for every breach of contract would only serve to chill commercial transactions." Rodgers v. Tecumseh Bank, 756 P.2d 1223, 1227 (Okla.1988). Here, because the parties did not share a "special relationship," they were "free to contract for any lawful purpose and upon such terms as they believe[d] to be in their mutual interest." Id. at 1226-27 (footnote citation omitted). Thus, plaintiffs cannot impose a duty upon Wells Fargo which does not exist.
 
 
 20
 Though recognizing economic duress as a potential defense to a release or settlement agreement, the district court nonetheless concluded the parties' 1988 line of credit extension was not such an agreement. The court further noted that even if the 1988 extension could be characterized as a settlement agreement, plaintiffs at most would be entitled to avoid the terms of that agreement. Finding no independent cause of action for economic duress under Oklahoma law, the court dismissed plaintiffs' claim.
 
 
 21
 On appeal, plaintiffs contend Wells Fargo's conditional renewal offer left them with three equally untenable options: (a) "accept the condition and risk default because depleting operating equity could result in inadequate margin money"; (b) refuse the condition and sustain losses from liquidating cattle purchased in reliance upon the bank's previous oral promise of unconditional renewal; or (c) "seek immediate refinancing," which Wells Fargo itself acknowledged as "improbable." Citing the Oklahoma standard for economic duress, plaintiffs claim "the 'injurious contractual demand' was that [they] prepay on the Term Note and risk being in default" and "[t]he 'threatened action,' given the alternatives to [Wells Fargo's] demand, was liquidation at a loss." Thus, plaintiffs maintain their acceptance of the six-month line of credit extension and subsequent prepayment of the term note were involuntary.
 
 
 22
 "The rationale underlying the principle of economic duress is the imposition of certain minimal standards of business ethics in the market place." Centric Corp. v. Morrison-Knudsen Co., 731 P.2d 411, 413 (Okla.1986). Because "[h]ard bargaining, efficient breaches, and reasonable settlements of good faith disputes are acceptable, even desirable, in our economic system," economic duress "comes into play only when conventional alternatives and remedies are unavailable to correct aberrational abuse of these norms." Id. at 413-14. For instance, economic duress may arise "upon the commission of a wrongful act which is sufficiently coercive to cause the person, faced with no reasonable alternative, to succumb to the perpetrator's pressure." Id. at 415-16 (footnote citations omitted). However, the doctrine "is available solely to prevent injustice," not to create it. Id. at 414 (footnote citations omitted).
 
 
 23
 Applying the doctrine to the facts of this case, it is clear that the circumstances surrounding Wells Fargo's conditional renewal offer and plaintiffs' acceptance of a six-month line of credit extension did not rise to the level of economic duress. Indeed, because Wells Fargo was in no way obligated to renew the line of credit note beyond the maturity date specified in the 1987 renewal note, we conclude plaintiffs were not entitled to assert economic duress as a basis for recovery.[7]
 
 
 24
 The summary judgment dismissal of plaintiffs' action is AFFIRMED.
 
 
 
 *
 The Honorable John C. Godbold, Senior Circuit Judge for the United States Court of Appeals for the Eleventh Circuit, sitting by designation
 
 
 [1]
 This alleged oral promise forms the basis of plaintiffs' entire action
 
 
 [2]
 Specifically, the manual defined "commitment" as "[a]n offer to extend credit which has been accepted by the borrower ... whether or not there are conditions precedent to be met such as working out the details or the terms of the loan agreement or the signing of an agreement."
 
 
 [3]
 Apparently, the loan officers who allegedly promised to renew plaintiffs' line of credit note did in fact do so while they supervised plaintiffs' account. However, when Wells Fargo subsequently restructured its lending program, the new loan officers assigned to plaintiffs' account did not honor their predecessors' commitment
 
 
 [4]
 Plaintiffs' constructive fraud claim also fails because there is no evidence of "a breach of either legal or equitable duty." See Faulkenberry v. Kansas City Southern Ry. Co., 602 P.2d 203, 206 (Okla.1979), cert. denied, 464 U.S. 850, 104 S.Ct. 159, 78 L.Ed.2d 146 (1983); Okla.Stat. tit. 15, § 59 (1983)
 
 
 [5]
 Section 1-208 states:
 A term providing that one party or his successor in interest may accelerate payment or performance or require collateral or additional collateral "at will" or "when he deems himself insecure" or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised.
 
 
 [6]
 Although "[g]ross recklessness or wanton negligence ... may call for an application of the theory of tortious breach of contract," Rodgers v. Tecumseh Bank, 756 P.2d 1223, 1227 (Okla.1988), here Wells Fargo did nothing more than exercise its contractual rights under the terms of the parties' agreements
 
 
 [7]
 Our holding is consistent with the Oklahoma Supreme Court's recent decision that "economic duress ... is not an independent tort under Oklahoma law." Cimarron Pipeline Constr., Inc. v. United States Fidelity & Guar. Ins. Co., 848 P.2d 1161, 1165 (Okla.1993)