**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 6 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

GILBERT WALKER; MARY NETTA
WALKER; FOUR WALKERS INC.;
TRAVIS WALKER,

        Plaintiffs-Appellants,

v.

FIRST NATIONAL BANK OF
MEDICINE LODGE,

        Defendant-Appellee.

No. 03-6314
(D.C. No. 02-CV-1082-HE)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , Chief Judge, **HENRY** , and **O'BRIEN** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

*    This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiffs Gilbert Walker, Mary Netta Walker, Travis Walker, and Four Walkers, Inc., all residents of Oklahoma (collectively, the "Borrowers"), appeal the district court's grant of summary judgment in favor of defendant First National Bank of Medicine Lodge, Inc., a Kansas corporation, (the "Bank") on their complaint alleging breach of contract, misrepresentation, breach of the implied covenant of good faith and fair dealing, lender liability, promissory estoppel, and fraud arising out of their indebtedness to the Bank. The district court, applying Oklahoma law under its diversity jurisdiction, [1] ruled that the Borrowers' contract-related claims were barred by Oklahoma's statute of frauds, and that they had not presented sufficient evidence to support a claim for fraud or misrepresentation. "We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Sandoval v. City of Boulder*, 388 F.3d 1312, 1320 (10th Cir. 2004) (quotation omitted). We affirm.

## I. BACKGROUND

In December 1999, Four Walkers, Inc., executed four promissory notes to the Bank, each with different loan amounts and maturity dates, for a total

---

[1] The promissory notes specify that they are to be governed and construed in accordance with Kansas law, but, as the district court noted, both parties have stated throughout this litigation that Oklahoma law governs the loan agreements. The district court therefore applied Oklahoma law, and neither party appeals that decision.

principal loan amount of $975,000. Included was an operating loan for $275,000 with a maturity date of December 20, 2000 ("Note 108"). Gilbert and Mary Walker, who own all of the interest in Four Walkers, Inc, and their son, Travis Walker, each guaranteed all the four loans, and Gilbert and Mary Walker signed a mortgage and security agreement and an agricultural security agreement to secure the loans. Additionally, Gilbert and Mary Walker signed a quitclaim deed transferring certain real estate to Four Walkers, Inc.

Four Walkers, Inc. did not make payment on Note 108 by its December 2000 due date. In the spring of 2001, the Bank informed the Borrowers that it was discontinuing agricultural loan operations. It agreed to extend Note 108's maturity date to June 2001, to give the Borrowers time to move their loans to another financial institution. The Borrowers signed a Change in Terms Agreement in April 2001, extending the final maturity date of Note 108 to June 30, 2001. Four Walkers, Inc. failed to pay the principal and interest due on Note 108 by the new due date, however. Because default on Note 108 constituted a cross-default under all of the remaining notes, the Bank demanded immediate payment on all loans, which, to date, the Borrowers have not made.

The Borrowers then filed the instant complaint against the Bank, alleging that they were induced into borrowing from the Bank based on oral representations by Bank agents stating that the Bank would remain in the local

area making agricultural loans for a substantial period of time, and that Note 108 would be renewed so long as the Borrowers met certain financial conditions. The Borrowers further allege that the Bank fraudulently added the quitclaim deed to the loan documents without their knowledge, and that they signed it without knowing that it conveyed real property to Four Walkers, Inc.

## II. ANALYSIS

### A. Statute of Frauds

Under Oklahoma law, a borrower may not "maintain an action to enforce or seek damages for the breach of any term or condition of a credit agreement having a principal amount greater than Fifteen Thousand Dollars . . ., unless such term or condition has been agreed to in writing and signed by the party against whom it is sought to be enforced or against whom damages are sought." 15 Okla. Stat. § 140(B). It is undisputed that the loan agreements between the Borrowers and the Bank are credit agreements within the meaning of section 140, and that none of the alleged oral representations described by the Borrowers is included or otherwise reflected in any of the loan documents. The district court ruled that, because the Borrowers' breach of contract, promissory estoppel, and lender liability claims are predicated on alleged oral representations that were not included in any loan documents or agreements, or otherwise reduced to writing, these claims are clearly barred by section 140(B)'s statute of frauds provision.

Aplt. App. Vol. III, at 394 (court order at 6, citing *Big John's Lumber Co. of Muskogee, Inc. v. City Bank*, 901 P.2d 832, 833-34 (Okla. Ct. App. 1995)).

On appeal, the Borrowers first contend that section 140's statute of frauds provision is not applicable where there is an allegation of fraud. As noted above, they have asserted misrepresentation and fraud claims, alleging that the Bank induced them to enter into the loan agreements and tricked them into signing the quitclaim deed. They contend that in *Brown v. Founders Bank and Trust Co.*, 890 P.2d 855 (Okla. 1994), the Oklahoma Supreme Court held that an allegation of fraud avoids application of the statute of frauds, even to contract-related claims. We disagree.

In *Brown*, the court held that the statute of frauds provision in section 140 does not bar a cause of action for fraud. *See id.* at 862-64. It concluded that the purpose of the statute of frauds – to protect lenders from liability litigation and promote certainty in credit agreements – would not be defeated by allowing fraud claims because of the high standards needed to establish fraud. *Id.* at 863. Nothing in *Brown* or any other Oklahoma decision, however, supports the Borrowers' argument that a mere allegation of fraud avoids application of the statute of frauds to contract and other claims. *Brown* simply holds that a borrower is not precluded by section 140 from bringing a cause of action for fraud, assuming the borrower can establish the elements of a fraud claim. *See id*.

at 861-864. As discussed below, we agree with the district court that the Borrowers failed to present evidence that would support a cause of action for fraud against the Bank. Thus, the district court properly dismissed the breach of contract, promissory estoppel and lender liability claims under section 140.

### B. Trade Usage and Duty of Good Faith

Next, the Borrowers argue that the district court erroneously rejected their breach of contract claim and their tortious breach of contract claim based on their allegation that the Bank violated the implied usage of trade and implied obligation of good faith provisions found in the Uniform Commercial Code ("UCC"). *See* 12A Okla. Stat. §§ 1-203, 1-205. They argue that under trade usage and the implied duty of good faith, the Bank was obligated to renew Note 108. Note 108 expressly provides, however, that payment was due on demand or, if no demand was made, on the December 20, 1999 due date, later amended to June 30, 2001. Further, it contains no provision obligating the Bank to renew or extend the loan. The district court ruled that neither an implicit trade usage nor an implicit obligation of good faith can override an explicit contractual term.

The Borrowers assert, without citation to any legal authority, that the district court's holding is contrary to the UCC. Borrowers are incorrect. As the district court correctly explained, an explicit contract term, here the definitive and unambiguous due date, controls over trade usage. 12A Okla. Stat. § 1-205(4).

-6-

Similarly, the obligation of good faith cannot be employed to override express contract terms or to obligate a party to accept additional terms or a material change in the contract's terms. *See Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357-58 (7th Cir. 1990) (holding bank did not violate good faith obligation by refusing to make further advances under loan which did not require it, even where borrower able to repay); *Roberts v. Wells Fargo AG Credit Corp.*, 990 F.2d 1169, 1174 (10th Cir. 1993) (rejecting similar argument, under Oklahoma law, that bank should have renewed note under implied duty of good faith, though loan did not require renewal); *Badgett v. Security State Bank*, 807 P.2d 356, 359-60 (1991) (holding bank did not violate good faith obligation by not renegotiating or restructuring loan because no express term in the loan agreement required bank to do so). Thus, the district court did not err in dismissing the Borrowers' claims for breach and tortious breach of contract.

## C. Misrepresentation and Fraud

Finally, the Borrowers allege that they presented sufficient evidence to submit their misrepresentation and fraud claims to a jury. We have reviewed the record and the evidence presented, and we disagree. The allegations that the Bank promised to renew Note 108 and promised to remain in the agricultural loan business in the Borrower's community are promises to act in the future.

Oklahoma only permits a fraud claim based on the promise of future acts if the plaintiff can establish that "the promise to act in the future is accompanied by an intention not to perform and the promise is made with the intent to deceive the promisee into acting where he would not otherwise have done so." *Citation Co. Realtors v. Lyon*, 610 P.2d 788, 790 (Okla. 1980) (noting general rule that promise to do something in the future is not fraud). We agree with the district court that the Borrowers presented no evidence that the Bank agents did not believe their alleged representations at the time they made them. "There must be evidence of each element of fraud presented before the issue may be properly submitted to a jury." *Roberts*, 990 F.2d at 1173 (upholding, under Oklahoma law, grant of summary judgment to bank where borrower failed to present evidence that bank's "promise to perform was accompanied by an intent not to do so").

We also agree with the district court that the Borrowers failed to present evidence that would support a claim that the Bank fraudulently hid the quitclaim deed from Gilbert and Mary Walker. The document is clearly entitled a quitclaim deed in all-capital letters, and the Walkers admit that they signed the deed. They contend, however, that an agent of the Bank hid the quitclaim deed under other papers; Mr. Walker stated in his deposition that he specifically remembered that this document was covered by other documents when he signed it, and that he was prevented from reading it because of time, though he did not explain what those

time constraints were. There is no evidence, however, that any agent of the Bank told the Walkers they had to sign the documents quickly or that they otherwise prevented the Walkers from reading the deed. As the district court ruled, precisely the same allegations as made by the Walkers have been held by the Oklahoma Supreme Court to be insufficient to establish an action for fraud. *See Silk v. Phillips Petroleum Co* ., 760 P.2d 174, 178-79 (Okla. 1988) (rejecting fraudulent concealment claim based on allegation that agent concealed lease agreement under other documents and that she hurriedly signed it without reading it, because no evidence that agent actively concealed lease from her or prevented her from seeing or reading it).

The judgment of the district court is AFFIRMED.

Entered for the Court

Deanell Reece Tacha
Chief Judge