## BUTLER v. CONYEL.

No. 25559.    Sept. 8, 1936.

A. Camp Bonds, for plaintiff in error.

J. F. Beavers and W. Shearer Brown, for defendant in error.

PHELPS, J. Plaintiff's petition was in two causes of action, in the first of which he alleged that he was an aged illiterate colored man, unable to read or write, and that in the year 1919 he entered into an oral agreement with the defendant, whereunder he was to purchase from the defendant a house and lot for $1,250, payable $50 in cash and $10 monthly; that under the terms of said agreement the defendant was to convey him the property by warranty deed upon completion of payment of the purchase price; that he had entered into possession and made said payments monthly since the year 1919, had lately discovered that he had paid defendant a total of $1,518.50, being $268 50 in excess of the purchase price, and that the defendant had refused to execute him a deed covering the property; and praying that the defendant be required to execute him such deed. In his second cause of action he asked recovery of the $268.50 paid defendant in excess of the purchase price.

The defendant filed a general denial, and further stated in his answer that he and the plaintiff had entered into a written contract on January 1, 1920, wherein plaintiff was to purchase the property for $1,500, to be paid at the rate of $10 or more per month, and in addition was to pay interest at 10 per cent. on unpaid installments, keep the taxes paid, and keep the premises insured; that said agreement provided that the $10 monthly payments were to be considered rent in case of default by plaintiff; that plaintiff had long since defaulted in the payment of the installments, and had never paid interest, taxes, or insurance.

Plaintiff's reply denied that he had entered into a written contract, and alleged that if the defendant had any such written instrument in his possession, said defendant "obtained same without the consent and knowledge of plaintiff and through fraud."

The case was tried to a jury, resulting in a verdict finding the issues generally in favor of the plaintiff and that the plaintiff was "entitled to a deed," said verdict making no mention of the excess $268.50 prayed for by plaintiff. The defendant appeals.

The defendant contends that the allega-

tion of fraud contained in plaintiff's reply, copied above, was insufficient to put the question of fraud in issue, and that no evidence of fraud should have been allowed by the court under such allegation. In theory the defendant is correct. Fraud cannot be pleaded in general terms; the specific acts constituting the fraud must be set forth. Mere conclusions are not sufficient.

Upon examination of the record, however, we find that when the evidence in substantiation of fraud was introduced by the plaintiff the defendant made no objection thereto. As a general rule, evidence which is otherwise competent, even if not within the pleadings, may be considered by the jury if no objection is voiced thereto. In the absence of such objection, followed by appropriate exception, this court will not review the admission of such evidence.

On the other hand, by demurrer to the plaintiff's evidence, followed by a motion for directed verdict at the conclusion of all the evidence, the defendant did preserve his right to complain of insufficiency of the evidence to sustain the verdict and judgment. We now consider that assignment.

The plaintiff testified that he and the defendant entered into the oral agreement as above described, to purchase the property; that he made all of the monthly payments, in accordance with said oral agreement, and that the defendant had refused to execute a deed; that he could neither read nor write, but that he could print his name. He admitted that he executed the written contract which was attached to defendant's answer, which contract on its face calls for payment of interest, taxes, and insurance, which payments admittedly were not made. The written contract bears the date of January 1, 1920, though plaintiff testified that it was executed about four years later. Plaintiff's evidence in support of his claim that his signing of the contract was procured by fraud is limited to the following from his own testimony:

"I went up there about four years after that. Mr. Butler had some papers up there and when I went up there to pay Mr. Butler $10 he had two papers and wanted me to sign them papers, he said because one of us might die, and I said, 'Yes, sir, one of us might die', and I signed them papers and I didn't know what it was and he took them and put in his drawer."

"I went down and paid Mr. Butler $10 and he just turned right around and said, 'I got some papers I want you to sign', and said, 'One of us might die', and he gave me

them papers and I signed them and I couldn't tell you what was on them if you might beat me to death."

The defendant denied ever having made any oral agreement at all with the plaintiff. As to the written agreement, defendant and one of the three witnesses thereto testified that when plaintiff came into defendant's office and signed the contract it was first read to him.

Whether there was an antecedent oral agreement, with the provisions as described by plaintiff, was a question of fact. The jury decided this issue in favor of the plaintiff, and we must therefore assume that such oral agreement did exist. But we must at the same time remember that plaintiff admitted execution of the subsequent written agreement, which brings us into the realm of law and its effect on such transactions. Regardless of whether the written agreement in fact did accurately set forth the terms of the oral agreement, and even indeed if the written agreement was radically different from the prior oral agreement, the law prescribes that in the absence of accident, mistake, or fraud the written agreement shall supersede all the preceding oral negotiations or stipulations concerning the same matter. Section 9456, O. S. 1931. It therefore does not solve our question when we assume that the oral agreement in fact existed, for, even so, as between the two, the written contract must govern unless its execution was procured by fraud.

It therefore develops that the controlling question in this case is whether plaintiff's evidence was sufficient to sustain the evident finding that the defendant fraudulently induced the plaintiff to sign the written contract. After much consideration we must answer this question in the negative.

Like a piece of once sound timber now so filled with termites as to be useless for any good purpose whatsoever, the loosely termed parol evidence rule has been so eaten with exceptions that it is often made to resemble an empty husk, appearing of strength but failing of practical application. And out of each weakening of the rule to appease the apparent ends of justice in the individual case fraud and injustice are thereby made easier in a thousand other cases. That which would not be recognized as legal fraud, accident, mistake, or otherwise in a different form of action is often accepted as sufficient for such if offered for the purpose of providing an exception to the parol evidence rule.

We know of no reason why fraud for the

purpose of avoiding the parol evidence rule should not require the same sufficiency of evidence as does fraud for any other purpose. If the limitation of the evidence and all its reasonable inferences leads us no further than to say "This **could** have been fraud," then we do not have legally actionable fraud. Particularly, where the fraud alleged is the procurement of a written instrument the proof must be by a preponderance of the evidence so great as to overcome all opposing evidence and to repel all opposing presumptions of good faith. Owen v. U. S. Surety Co., 38 Okla. 123, 131 P. 1091; Rogers v. Harris, 76 Okla. 215, 184 P. 459; Hembree v. Douglas, 169 Okla. 403, 37 P. (2d) 314; Clark v. Lockstone, 170 Okla. 316, 39 P. (2d) 971; Jander v. McNeill, 169 Ok'a. 433, 43 P. (2d) 1022.

The particular kind of fraud relied upon here by the plaintiff appears to be the claim that he was induced by the defendant to sign the written contract, without reading it or having it read to him, upon the implied representation that it contained the oral agreement of the parties. Disregarding, of course, the testimony of the defendant's witnesses, and accepting that of plaintiff as true, the sum total of the evidence in this respect is that the defendant said: "Sign this. One of us may die." This was no inducement to the p'aintiff to forego the reading of the instrument, or having it read to him. Was it an implied representation, under all of the circumstances of the case, that the instrument contained the prior oral agreement of the parties, which thus in its own turn induced the failure to read, followed by the signing? That it was, it must be admitted, is an attractive conjecture,—but it is little if anything more. The precaution to reduce an agreement to writing because "one of us may die" would be as applicable to an agreement made at the time of the writing as to an agreement already in standing, or it could be as applicable toward crystallization of the defendant's understanding of the real agreement as that of the plaintiff's. In fact, the fear that "one of us may die" is one of the basic reasons for reducing any contract to writing. If we accept the inference that under all the circumstances of the case the expresson constituted some evidence of an implied representation that the writing constituted the oral understanding of the parties, still such evidence, in our opinion, falls far short of that clear, convincing character required in such cases, and permitting a judgment based thereon to be affirmed would in the end promote more injustice than justice in the broad run of cases.

No fiduciary relationship existed in this case between the plaintiff and defendant. No accident or mistake is alleged. It is not shown in evidence that at the time of the execution of the written contract the defendant knew of plaintiff's inability to read and write. For that matter, there is no rule exempting illiterate persons from operation of the parol evidence rule, though illiteracy is sometimes given materiality on the question of whether fraud was actually used in procuring the signature, where there is a direct misrepresentation. A party's mere ignorance, occasioned by his limited intelligence and understanding of the language and of the contents of the contract which he voluntarily executes, is not, in the absence of fraud, a ground for avoiding it, though it is different from what he supposed. McDonald v. McKinney Nursery Co., 44 Okla. 62, 143 P. 191.

The judgment is reversed, and the cause is remanded.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and WELCH, JJ., concur.