## DARBY PETROLEUM CO. et al. v. BOWERS.

No. 27111. June 1, 1937.

Rehearing Denied Sept. 14, 1937.

Application for Leave to File Second Petition for Rehearing Denied June 20, 1939.

Anglin & Stevenson and Redmond S. Cole, for plaintiffs in error.

Park Wyatt, Byron Lamun, and Holley & Holley, for defendant in error.

BAYLESS, V. C. J. Lee Bowers sued Darby Petroleum Company et al. in the district court of Pottawatomie county, Okla., to recover damages for injuries to real and personal property. Judgment was for plaintiff, and defendants appeal.

Plaintiff's petition consisted of two causes of action followed by a general prayer for damages in the aggregate. The allegations of negligence on the part of defendants are the same in each cause of action. The negligence charged consisted of permitting salt water and other deleterious substances, produced on oil and gas leases, to escape into a natural stream, flowing by plaintiff's land, and to be deposited upon the plaintiff's land. These acts of negligence were charged to have occurred in the years 1928, '29, '30, '31, '32 and '33. In the first cause of action it was alleged that the value of the plaintiff's land was permanently destroyed, including the destruction of growth thereon and especially pecan trees. In the second cause of action it was alleged that plaintiff lost the value of the pecan crop for the years 1931, '32, and '33. The separate answers of Gypsy Oil Company and Slick-Urschel Oil Company were general denials. The joint answer of Darby Petroleum Company et al. was a general denial and a plea of due care, and a plea of settlement. Plaintiff replied to this answer by a general denial, and a specific denial of settlement, and a plea that the settlement set forth in the answer related to other land and other injuries, and if it mentioned the land involved herein, it was obtained by fraud and duress and misrepresentation.

The release relied upon described the land involved herein, and in the first paragraph acknowledged receipt of $25, "which is in full payment, settlement and satisfaction for **any and all damage of whatsoever nature or character to** December 31, 1933." And after listing the companies involved in the settlement (which included all of defendants herein except Slick-Urschel Oil Company) the release in the third paragraph recited: "The undersigned hereby releases, acquits and discharges the above-named companies from any and all claim for **any and all damage of whatsoever nature or character to December 31, 1933."** The release was a prepared, mimeographed form, and the underscored portions of the quotations are typewritten insertions. The concluding paragraph is a reservation by plaintiff of any rights he had against others not participating in this settlement with him.

Plaintiff's first cause of action was to recover for the loss of value of his land for acts done between 1928 and 1933. The depreciation in value of the land included every growing thing appertaining thereto. The plaintiff describes the trees, etc., which died, but we take this to be only an enumeration of the elements of value of the land. See Darby Pet. Co. v. Mason, 176 Okla. 138, 54 P. (2d) 1046. However, damages may be recovered for the loss of standing timber, or crop-bearing trees or growing crops, annual or otherwise, in actions for that purpose without attempting to recover for loss of value in the land. Armstrong v. May, 55 Okla. 539, 155 P. 238. That case holds that injury to or loss of things which are a part of the land, but have a distinct value of their own, may be the basis of an action for damages as differentiated from an action for injury to the land.

Plaintiff's second cause of action was for the loss of the pecan crops for three separate years. Gypsy Oil Company made an effort to have the second cause of action stricken as being included by law within the first cause of action, but no effort seems to have been made to pursue this effort nor to preserve a record thereon. Therefore, plaintiff was entitled to trial on both causes of action.

The defense of release must have first consideration. If this defense is good, it materially affects the causes of action, if it does not altogether destroy them.

The evidence shows that as early as January 17, 1931, plaintiff had attorneys who were writing Mr. Gray, of the Seminole Oil Producers Association, regarding plaintiff's claim for damages for loss of pecan trees. The evidence of the defendant shows that plaintiff and Gray, and others whom Gray sent out, had discussed the cause of the death of the trees and the loss of corn. Plaintiff says that in November, 1932, he saw Gray and agreed to settle with him for 4 acres of corn lost, and they agreed on $25, which Gray was to send after the end of the year because the association was then auditing and closing its books for the year. Gray says he and plaintiff discussed

corn and pecan trees, he at all times contending that plaintiff had no claim against the association. He says they finally agreed to settle for trees and corn for $25 with the understanding that plaintiff present any further claims to producers not members of the association. In February, 1933, Gray received a check payable to plaintiff's order for $25 and dated February 1, 1933. He prepared the release above quoted and sent the check and release to plaintiff by one Dees, who made no statement to plaintiff as to its contents or effect. Plaintiff executed the release and endorsed and cashed the check.

Plaintiff pleaded that the release was intended to relate to damages to corn on 80 acres of land north of the land involved, and that if the land involved herein was described in the release obtained it was a mistake, and the release was obtained by fraud, duress, and misrepresentation. His evidence is that the release related to four acres of corn, but he in no way identifies the land on which the corn was located. The only land he described as being his is the 80 acres he owns and sued on. Therefore, his first defense to the release fails.

We must now consider whether the release executed was obtained by fraud, strictly speaking. The fraud alleged related to the misdescription of the land upon which the damaged crop was grown as well as the crops, covered by the negotiations. The evidence did not sustain this. The plaintiff testified about the pecan trees, the pecan crop, and the corn on the 80 acres involved in this action. The evidence conflicts as to what crops or thing on the land was included within the settlement. The release itself is broad enough to cover all of these elements.

We are of the opinion that the plaintiff's evidence is insufficient to defeat the effect of the release. The plaintiff received into his hands a written instrument purporting to embody his agreement of settlement. He can read and write. He undertook to say on the stand that it had been altered by the insertion of the typewritten portions above quoted. But, upon cross-examination, he admitted the upper three paragraphs were the same at the trial as they were when he signed. The lower paragraphs do not conflict therewith, for the typewritten insertion in the first of these two is identical with the first paragraph above. Their tenor and effect are the same. The alteration would not be material, even if the plaintiff's evidence of change is accepted.

The only other things added to the contract are the date, plaintiff's signature, and the witnesses' signature. Plaintiff admits the authenticity of these. Therefore, plaintiff's charge of a fraudulent alteration must fail.

Plaintiff's charge of fraud in the procurement of the release must fail as a matter of law. Plaintiff does not contend that anyone misrepresented to him the contents or effect of the instrument. We have said in Butler v. Conyel, 177 Okla. 424, 60 P. (2d) 749, that the presentation by one party to the contract to the other of a written instrument purporting to embody their agreement, and the person receiving it signs the same, the mere presentation of the instrument is no proof of fraud or misrepresentation, especially when the party complaining could read. In the case before us, the signer did read it—at least he so familiarized himself with it that he could describe it.

The general rule of law relating to the duty resting upon a releasor to inform himself of the contents of the release he signs is stated in 53 C. J. 1213, sec. 30, as follows:

"It is the duty of a releasor, having the ability and opportunity, to inform himself of the contents of the release before he executes it, and to exercise prudence in signing it."

Likewise it is said in 23 R. C. L., sec. 17, page 387, note 7:

"But one who has signed a written release, without being induced thereto through any fraud or deception, cannot avoid its effect on the ground that at the time he signed the paper he did not read it or know its contents."

Efforts to avoid releases and their legal effects are governed by the same rules of law as any other contract. See 53 C. J. 1219, and 23 R. C. L., pages 383, et seq., subdivision III, secs. 13-19. We recognized this rule in Davis v. Higgins, 95 Okla. 32, 217 P. 193, and said:

"* * * But there is no reason why a release of this kind should be invalidated for fraudulent representations except for the same reasons any other written instrument would be."

In that opinion we called attention to the confusion apparently arising from a failure to differentiate between the grounds of mutual mistake and fraudulent representations. In the case of Davis v. Higgins, supra, the plaintiff relied upon fraud and not upon mistake. In this case plaintiff relied upon both, but we cannot dis-

cover any proof of the mistake alleged. The elements of fraud as set out in Davis v. Higgins, supra, and the cases cited therein, and the many other opinions of this court, are wholly lacking in plaintiff's testimony.

We therefore hold that plaintiff had been paid for all damages to his pecan trees, which had died up to and including December 31, 1933, as well as all crops lost in so far as the 80 acres described in the petition are concerned, and the plaintiff has voluntarily released appellants therefrom; and the trial court erred as a matter of law in submitting such issues to the jury.

The wording of the written release is generally descriptive. It could cover any damage plaintiff had suffered up to the end of December, 1933. We do not understand that appellants claim the release covers depreciation in value to the land. We would be unwilling to so hold under this record. The general rule is as stated in 23 R. C. L. 387, sec. 17, note 6:

"And the doctrine is firmly rooted in equity that when an instrument is so general in its terms as to release the rights of a party of which he was ignorant, and which were not in contemplation of the bargain at the time it was made, the instrument will be restrained to the purposes of the bargain, and the release confined to the right intended to be released."

In so far as this record is concerned, neither of the parties mentioned the depreciation in value of the land, if any, in their negotiations. We are leaving this question open for litigation on the retrial of this case, if it is retried.

Plaintiff insists that defendants are not entitled to have the evidence considered because they did not renew their demurrer or move for a directed verdict at the close of all of the evidence. Smith v. Ferguson, 96 Okla. 150, 221 P. 447, and other cases. We find that defendants did not renew their demurrer at the close of the testimony, but they did file a written requested instruction for a directed verdict in their favor. This is sufficient. Norman v. Lambert, 64 Okla. 238, 167 P. 213. The cases cited by plaintiff all indicate that the sufficiency of the evidence may be tested by demurrer or motion for directed verdict. Plaintiff insists that the requested instruction was general and did not specify the grounds intended to be covered by it. Faldey v. Coats, 47 Fed. (2d) 856, 89 A. L. R. 1, and other cases. We agree that the proper practice is to state the grounds upon which

such motions are made, but we again say what we did in Oklahoma City v. Richardson, 180 Okla. 314, 69 P.2d 334:

"* * * If the trial court is content to rule upon a general demurrer to the evidence or motion for directed verdict, without requiring the reasons to be stated, and the other party is likewise content, this court is bound to pass upon any issue in the case which reasonably may be said to be within the scope of the demurrer or motion."

Judgment reversed.

RILEY, CORN, GIBSON, and DANNER, JJ., concur. OSBORN, HURST, and DAVISON, JJ., dissent. WELCH, V. C. J., absent.