Minnie Marie Hopkins SILK, Appellee,

v.

**PHILLIPS PETROLEUM COMPANY, Appellant.**

No. 57121.

Supreme Court of Oklahoma.

June 21, 1988.

Rehearing Denied Sept. 13, 1988.

Kenneth Heady, C.J. Roberts, Galen E. Ward, Jim Hamilton, Phillips Petroleum Company, Harvey L. Harmon, Sr., Oklahoma City, Holland Meacham, Elk City, for appellant/cross/appellee.

Stanley Ell Niece, Elk City, John C. Niemeyer, Linda G. Alexander, P.C., Oklahoma City, for appellee/cross/appellant.

SIMMS, Justice:

Appeal from a jury verdict and judgment entered thereon against appellant, Phillips Petroleum Company (Phillips), for damages resulting from alleged fraudulent misrepresentation to plaintiff below, Minnie Marie Hopkins Silk (Silk). The jury apparently found that Phillips, acting through its agent, fraudulently induced Silk to sign an "option to renew clause" while she was executing a five-year oil and gas lease.

Silk's petition [1] filed August 7, 1980, stated two claims for relief arising out of the alleged fraudulent misrepresentation. She asked for equitable rescission of the option to renew clause and that her title to the lease property be quieted. She also prayed for damages incurred as a result of Phillips' alleged fraudulent inducement to contract, for punitive damages, and for attorney's fees and costs.

Silk's legal claim for damages predicated upon fraud was tried first. At the conclusion of Silk's case in chief, Phillips demurred to her evidence and moved for a directed verdict. Phillips' demurrer was overruled, and its motion was denied. Phillips rested without presenting any evidence, preserving its right to complain of the insufficiency of the evidence to sustain the verdict and judgment.

The jury returned a verdict awarding Silk $18,092.00 in actual damages and $3,761,798.00 in punitive damages. In ruling on Silk's equitable claim for rescission, the trial court found that the damages awarded by the jury fully compensated Silk for Phillips' exercise of their option to renew the lease. Thus Silk's request for rescission of the option was denied.

1. The original petition joined Silk and three other parties as plaintiffs, and Mike Rainbolt (individually), Rainbolt Company, and Phillips as defendants. Plaintiffs subsequently dismissed defendants Rainbolt and Rainbolt Company. Phillips demurred specially to plaintiffs' petition on the ground that several causes of action were improperly joined. The trial court sustained the demurrer as to misjoinder, and directed that the plaintiffs proceed under separate actions. The plaintiffs elected to try Silk's case first.

After judgment was entered for Silk on her legal claim for damages, Phillips filed a motion for judgment notwithstanding the verdict and, alternatively, a motion for new trial. These motions were overruled, and the trial court entered judgment for Silk in the sum of $3,779,890.00, with post-judgment interest accruing pursuant to 12 O.S. 1979 Supp., § 727. Silk's motion for pre-judgment interest was denied.

Phillips' petition in error alleges 45 points of error. Generally, Phillips alleges that:

(1) Silk's action was barred by Oklahoma's two-year statute of limitations on tort actions;

(2) Silk's equitable claim for rescission should have been decided before her claim at law for damages;

(3) If Silk successfully proved fraud, the trial court had no authority to deny her request for rescission;

(4) The trial court erred in overruling Phillips' demurrer to the evidence because Silk's attempts to prove Phillips' liability based on a principal/agent relationship, and to prove fraud and accompanying damages were fatally deficient;

(5) The punitive damages award is grossly excessive;

(6) Prejudicial conduct of Silk's attorneys requires reversal; and

(7) The trial court erred in denying Phillips the right to introduce on cross-examination the allegations of Silk's petition that were contrary to her courtroom testimony.

Silk filed a cross-petition in error, appealing the trial court's denial of her equitable claim for rescission of the renewed lease. Silk's request for rescission was based on two theories: first, the fraud allegedly perpetrated; and second, total lack of consideration, or alternatively, gross inadequacy of consideration for the option to renew. Silk agrees that the oil and gas lease agreement, which she says consisted of one page, was properly signed, acknowledged and recorded. However, she insists that the "option to renew clause" constituted a separate instrument and thus was not supported by any consideration, that it was signed as a result of fraudulent misrepresentations, and was not duly acknowledged or properly recorded.

Silk argues that the trial court should have rescinded the renewed lease and allowed Phillips a "set-off" in the amount of actual damages found by the jury; i.e., the amount the jury found the lease to have been worth. Silk also argues that the court erred in denying her motion for pre-judgment interest on the actual and punitive damages awarded.

## I.

We address first Phillips' claim that the trial court erred in overruling Phillips' demurrer to Silk's evidence and its request for directed verdict at the conclusion of Silk's case in chief.

In passing upon alleged error in an action at law, we are committed to the rule that: where there is any competent evidence or reasonable inference from circumstances reasonably tending to establish a cause of action or to sustain the jury's verdict and judgment based thereon, such judgment will be sustained on appeal unless shown to be contrary to law. *Oklahoma City v. Prieto*, Okl., 482 P.2d 919 (1971); *Walker v. St. Louis–San Francisco Ry.Co.*, Okl., 646 P.2d 593 (1982). However, if upon examination of the record it is found that there is no evidence reasonably tending to support the verdict and judgment for the plaintiff; such judgment will be reversed. *Green v. Safeway Stores, Inc.*, Okl., 541 P.2d 200 (1975).

Assuming, without deciding, that Silk's claim is not barred by the statute of limitations and that vicarious liability may be imposed upon Phillips as principal if fraudulent misrepresentation by the person who procured the lease is proved, we examine Phillips' allegation that Silk's attempt to prove fraud was fatally deficient.

The elements of actionable fraud are that the defendant made a material representation that was false, that he knew when he made the representation that it was false, and that he made it with the intention that it should be acted upon by

plaintiff, and that plaintiff acted in reliance upon it and thereby suffered detriment. *D & H Co., Inc. v. Shultz*, Okl., 579 P.2d 821 (1978); *State ex rel., Southwestern Bell Telephone Co. v. Brown*, Okl., 519 P.2d 491 (1974).

█ There must be evidence of each element of fraud presented before the issue may be properly submitted to the jury. *P.E.A.C.E. Corp. v. Oklahoma Natural Gas Co.*, Okl., 568 P.2d 1273 (1977). As this Court stated in *Johnson v. Caldwell*, 180 Okl. 470, 71 P.2d 620, 623 (1937):

> "... It is the rule that fraud is a question of fact to be determined by the jury, but there must appear some reasonable proof of fraudulent intent. The mere fact that fraud is claimed will not justify the submission of that issue unless facts are produced from which an *irresistible deduction of fraud reasonably arises.* Fraud may not be presumed by the jury from circumstances; it must arise as does any other issue of fact from a preponderance of all the evidence. Deceit, fraud, and fraudulent intent arise from acts and conduct inharmonious with good faith and must emanate from clear and convincing proof." [emphasis added]

█ Although fraud is never presumed, but must be proved, it may be proved by circumstantial evidence. *Austin v. Wilkerson, Inc.*, Okl., 519 P.2d 899 (1974). Thus, this Court on review will consider evidence not only of the actual leasing transaction between Silk and Phillips' alleged agent, but also facts and circumstances surrounding this transaction. Prior similar dealings by the alleged wrongdoer may also be considered. *Cates v. Darland*, Okl., 537 P.2d 336 (1975).

Evidence of events leading up to the procurement of Silk's lease was introduced by way of adverse witnesses called in Silk's case in chief. Phillips orally contracted in 1974 with a lease broker, Mike Rainbolt, to acquire oil and gas leases in an area of Beckham County in western Oklahoma designated by Phillips as a "lease play".

Phillips provided Rainbolt with lease forms, including typewritten forms captioned "option to renew clause." Rainbolt, who operated an incorporated lease brokerage company, was not instructed on how to use or how to explain the forms. Phillips did specify the terms to be offered to prospective lessors: the lessor was to receive bonus payments of up to $35 per acre, retaining a ⅛ royalty interest. The lease term was for a five year primary term, and the option to renew clause allowed the lessee, upon expiration of the primary term, to renew the lease by timely payment of an additional bonus of $35 per acre. The lease also provided for $1 per acre per year delay rental in the event a well was not drilled on the property before the expiration date of the lease.

Thomas Williams, who procured the lease at issue in this suit, was one of several landmen employed by Rainbolt to acquire leases in the lease play area designated by Phillips. Rainbolt paid for the leases, and the leases were taken in his name. The leases were subsequently assigned to Phillips.

The Williams–Silk leasing transaction consisted of two brief meetings, to which they were the only witnesses. Silk testified that she was first contacted by Williams late in February, 1975. Williams approached Silk in the grocery store where she was employed and inquired whether she was interested in leasing the mineral interests she owned in Section 28, Township 9 North, Range 22 West, in Beckham County. Silk told Williams that she and two of her cousins—who had inherited the property in September, 1968, and had not previously leased it—would like to lease their jointly held 80 acres of minerals.

Silk told Williams the terms to which she would agree, based on a lease she had entered into with another party in 1973 on property located a mile from the Section 28 property. The 1973 lease was a straight five-year lease at $35 per acre bonus, with a ⅛ royalty interest.

Several days later, on March 1 or March 3, 1975, Williams returned to the store with the lease documents for Silk's signature. Silk testified that she believed the parties had reached an agreement on the price and

terms of the lease at their first meeting, so there was no discussion of these at their second meeting. Silk also said that Williams had not mentioned the option to renew clause at their first meeting, thus alleging that the written contract she signed was inconsistent with the prior oral agreement she believed the parties had made.

■ Although inconsistent with the alleged prior oral contract, the written contract must govern unless its execution was procured by fraud. *Mitchell v. Kimbrough*, Okl., 491 P.2d 289 (1971).

Silk testified that she did not read the lease documents before signing, and that while she had signed the option to renew clause, she had not seen it. Silk stated that if Williams had shown the clause to her, and had explained it, she would not have signed the lease. She further asserted that Williams had failed to give her a copy of the lease, but admitted that she had not requested a copy at any time after their second meeting.

Silk presented evidence under several theories in her attempt to prove that Williams fraudulently procured her signature on the option to renew clause.

■ First, based on her statement that the option clause was never mentioned by Williams at their first meeting, she claims that the act of later presenting the lease papers for her signature without mentioning the option constituted the fraudulent inducement. In other words, she alleges that Williams impliedly represented that the lease documents presented for her signature embodied her understanding of the alleged prior oral agreement.

This Court held in *Dusbabek v. Bowers*, 173 Okl. 53, 43 P.2d 97 (1934) and again in *Miller v. Troy Laundry Machinery Co., Inc.*, 178 Okl. 313, 62 P.2d 975 (1936), that fraud in the inducement may consist of a representation that the written agreement contains the oral understanding of the parties, which representation induces the other party to sign the contract without reading it. However, in those cases, representations that the written contract contained the parties' prior oral agreement were expressly made and were contemporaneous with the signing of the instruments.

In *Darby Petroleum Co. v. Bowers*, 185 Okl. 285, 91 P.2d 663, 665 (1937), citing *Butler v. Conyel*, 177 Okl. 424, 60 P.2d 749 (1936), this Court said:

"[T]he presentation by one party to the contract to the other of a written instrument purporting to embody their agreement, and the person receiving it signs the same, *the mere presentation of the instrument is no proof of fraud or misrepresentation,* especially when the party complaining could read ..." [emphasis added]

Here, as in *Butler*, supra, the record shows no evidence that representations as to the contents of the written agreement were made by Williams at the time the instruments were presented for Silk's signature.

Second, Silk claims that Williams actively concealed the option from her, preventing her from seeing or reading it. The evidence shows that Silk signed a printed oil and gas lease form, a typewritten option to renew clause, and a printed rental division order (dealing with delay rentals). Silk testified that the option to renew clause was not taped to the bottom of the printed oil and gas lease form at the time she signed the instruments. The original lease documents, with the clause taped to the bottom of the printed oil and gas lease form, were introduced into evidence, as were photocopies of the lease documents with the option to renew clause as a separate page.

Using the photocopied lease documents, Silk demonstrated to the jury how she purportedly signed the option without seeing it. She explained:

"We'll say this is the booth in the back of the store. He [Williams] was standing here at the edge and I was standing here. He took the lease out of his briefcase. He put it here and, like I said, he had an X already marked where I was to sign. The agreement that we had agreed upon was the five years, the one-eighth and the $35. There had never been an option mentioned to me. I signed here and then he lifted up the

paper, 'sign here and sign here,' and this is what I did in good faith."

Silk suggests that this demonstration constituted evidence that Williams used "artifice or trick" to conceal the option to renew clause and prevent her from reading it. We are unable to draw that conclusion from examination of the record; and in considering issues presented on appeal, this Court is confined to the record. *McGhee v. McAllister*, Okl., 474 P.2d 940 (1970); *Matter of Rich*, Okl., 604 P.2d 1248 (1979).

In addition, while Silk testified that she hurriedly signed because her employer had objected to the conducting of personal business during working hours, there is no indication that Williams prevented Silk from reading the lease documents by insisting that she sign them at that time.

This Court's observations in *Butler v. Conyel*, supra, at page 751, are particularly applicable to this case:

"The particular kind of fraud relied upon here by the plaintiff appears to be the claim that he was induced by the defendant to sign the written contract, without reading it or having it read to him, upon the implied representation that it contained the oral agreement of the parties. Disregarding, of course, the testimony of the defendant's witnesses, and accepting that of plaintiff as true, the sum total of the evidence in this respect is that the defendant said 'Sign this. One of us may die.' This was no inducement to the plaintiff to forego the reading of the instrument, or having it read to him. Was it an implied representation, under all of the circumstances of the case, that the instrument contained the prior oral agreement of the parties, which thus in its own turn induced the failure to read, followed by the signing? That it was, it must be admitted, is an attractive conjecture, but it is little if anything more ... If we accept the inference that under all the circumstances of the case the expression constituted some evidence of an implied representation that the writing constituted the oral understanding of the parties, still such evidence in our opinion falls far short of that clear, convincing character required in such cases, and permitting a judgment based thereon to be affirmed would in the end promote more injustice that justice in the broad run of cases."

Third, Silk claims that the alleged failure of Williams to inform her of the existence of the option, after having undertaken the duty of informing her of the terms of the lease, constitutes fraud. The question is whether Williams had a duty to disclose to Silk the existence of the option, so that failure to disclose constituted misrepresentation of a material fact.

The option is clearly material to the leasing agreement. However, silence as to a material fact is not necessarily, as a matter of law, equivalent to a false representation; there must have been an obligation to speak. In determining whether there is a duty to speak, consideration must be given to the situation of the parties and the matters with which they are dealing. *Barry v. Orahood*, 191 Okl. 618, 132 P.2d 645 (1962). If on account of peculiar circumstances there is a positive duty on the part of one of the parties to a contract to speak, and he remains silent to his benefit and to the detriment of the other party, the failure to speak constitutes fraud. *Hubbard v. Bryson*, Okl., 474 P.2d 407, 410 (1970).

There is no evidence of "peculiar circumstances" that would give rise to a positive duty on Williams' part to point out or explain the option to Silk. Silk, a literate adult, had previously executed oil and gas leases, and was generally familiar with their terms. The parties were involved in an arms-length business transaction; a confidential or fiduciary relationship is not alleged, though we recognize that the duty to disclose does not always depend upon the establishment of such relationship. *Barry v. Orahood*, supra. We would also point out that the plainly captioned option to renew clause was separately signed, making it difficult for the signing lessor to be unaware of the rider—whether or not it was attached to the printed oil and gas lease.

We note that neither Rainbolt—who had been in the lease brokerage business for

thirty years—nor Williams—who had been a landman for forty years—had used an option to renew clause before. Phillips had not previously used option to renew clauses in obtaining leases in Beckham County, but introduced the clauses after unsuccessful attempts to obtain straight ten-year leases with bonus payments of $35 per acre.

However, this does not support an inference that use of the options—or alleged failure to mention the options to lessors—constituted fraud. A five-year lease with an option to renew is not simply a disguised ten-year lease. Under the terms of these leases, when the option to renew was exercised an additional $35 per acre bonus was paid, making the payment to the lessor $70 per acre for the ten year period.

Having determined that Silk did not introduce evidence of a material misrepresentation, we need not examine whether she offered evidence to meet the other elements of an action for fraud. The absence of any one element of fraud is fatal to her claim. *P.E.A.C.E. Corp. v. Oklahoma Natural Gas Co.*, Okl., 568 P.2d 1273 (1977).

Since Silk failed to introduce evidence of each element of fraud, the trial court erred in overruling Phillips' demurrer to the evidence and denying Phillips' motion for a directed verdict on Silk's legal claim of fraud. In light of this holding, we need not address the other errors alleged by Phillips.

## II.

In her cross-petition in error, Silk asserts that the trial court erred by refusing to rescind her lease under her equitable claim, and by refusing to allow pre-judgment interest on the jury's award of actual and exemplary damages in the legal action for fraud. In light of our holding that Silk failed to prove fraud, we need not address her claim for pre-judgment interest.

Silk's legal and equitable claims proceeded on a single set of facts. She asked for relief based upon two legal theories; first, the common law action of deceit or fraud, and second, an action for equitable rescission. The underlying basis of both of these theories is admitted by Silk to be the same. The action for rescission included, in addition to fraud, the theory that the option contract was not supported by consideration, or alternatively, that the consideration was grossly inadequate.

The trial court, in denying Silk's claim for equitable rescission, made no specific finding that there was or was not fraud, nor did it determine the issue of adequacy or lack of consideration. Instead, the trial court found that the damages awarded by the jury fully compensated Silk for Phillips' exercise of the option to renew. By this ruling the trial judge in effect adopted the jury verdict for damages on the legal claim as a basis for his negative disposition of the equitable claim for rescission.

In reviewing the trial court's decision on Silk's equitable claim for rescission, this Court is not bound by the reasoning of the trial court or by its findings but will examine the whole record, consider and weigh the evidence, and if the law and facts warrant, will affirm the judgment, if the trial judge reached the correct ultimate conclusion. *Public Service Company of Oklahoma v. Home Builders Association of Realtors, Inc.*, Okl., 554 P.2d 1181, 1184 (1976); *Arine v. McAmis*, Okl., 603 P.2d 1130 (1979).

As above pointed out, Silk failed to offer evidence supporting all of the requisite elements of a legal cause of action for fraudulent misrepresentation, thus an action for rescission based on fraud must necessarily fail. However, Silk correctly asserts that it is possible to obtain rescission without proving fraud. See, 15 O.S.1981, § 233.

Thus we will consider whether Silk's action for rescission may be supported on the theory that the option was not supported by consideration, or alternatively, that the consideration was grossly inadequate.

 Under 15 O.S.1981, § 114, a written instrument is presumptive evidence of a consideration, and the burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it. 15 O.S. 1981, § 115.

To determine whether the option was supported by consideration, we must first address the question of whether the option was simply a clause or rider incorporated in the oil and gas lease, or whether the option to renew constituted a separate option contract.

Even if the oil and gas lease form and the option to renew clause were physically separate at the time of execution, the language of the option itself indicates that it is to be considered as incorporated in the oil and gas lease. The option recites in part that:

"For the same consideration, Lessor (Silk) grants to Lessee (Rainbolt) the right and option to extend the primary term set forth *in this lease* for a term of five years from the 1st day of March, 1980, by on or before the expiration of the present primary term set forth *in this lease,* paying or tendering to the credit of Lessor in the bank named *in this lease* a bonus consideration of $35 per net mineral acres owned ..." [emphasis added]

Upon execution of the lease agreement, Silk received a bonus consideration of $35 per acre. In return she granted an oil/gas lease covering her mineral interest. The $35 per acre consideration supported a number of promises by the lessor, including the right to renewal of the lease on the same terms, upon payment of an additional $35 per acre on or before March 1, 1980. The option right, therefore, was supported by consideration.

In *Northwestern Oil and Gas Co. v. Branine,* 71 Okl. 107, 175 P. 533, 536 (1918), this Court upheld the optional surrender clause of a lease, rejecting the argument that additional, separate consideration was necessary in order for the option provision to be binding:

"... The Court has no right to fractionalize contracts or divide it up into sections, and say that the cash bonus supports any particular covenant to the exclusion of another ... The conclusion that the cash bonus paid upon the execution and delivery of the lease supports each and all of the terms and conditions contained there-in, including the surrender clause, is sustained by all the Courts except in those cases where a nominal consideration was rendered and was held insufficient ..."

Even assuming arguendo, that there was no consideration for the option, the option would not have been invalid but would have been revocable. Silk, as optionor, would have had the opportunity to revoke the offer to extend the primary term before the date of its expiration. Silk testified that the bonus check for the option renewal came to her attention on February 22, 1980, well before the March 1, 1980 expiration date. Thus, the evidence clearly shows that Phillips exercised its option, or accepted Silk's offer to renew the lease, before the date of its expiration and before any revocation by Silk of her offer. (See 1 Williston, Contracts, 3d Ed., § 25)

Silk argues alternatively that the consideration for the option is inadequate. Even gross inadequacy of consideration, standing alone, is not enough ground upon which to cancel a contract or to base rescission. *Canning v. Bennett,* 206 Okl. 675, 245 P.2d 1149 (1952).

Thus, we find that the trial judge reached the correct ultimate conclusion; his judgment denying Silk's equitable claim for rescission is AFFIRMED.

Judgment on jury verdict on plaintiff's legal claim for fraudulent misrepresentation REVERSED with directions to enter judgment for defendant. Judgment denying plaintiff's equitable claim for rescission is AFFIRMED.

DOOLIN, C.J., and LAVENDER, SIMMS, OPALA and SUMMERS, JJ., concur.

ALMA WILSON and KAUGER, JJ., concur in part, dissent in part.

HODGES, J., dissents.

HARGRAVE, V.C.J., disqualified.