**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 24 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

THOMAS L. WELLS and NANALEE
F. WELLS, husband and wife,

     Plaintiffs-Counterclaim
     Defendants-Appellants,

v.

PHILLIP W. REDWINE, individually
a/k/a Phillip W. Redwine Law Offices
d/b/a Redwine and Associates; and
D. BENHAM KIRK, JR.,

     Defendants-
     Counterclaimants-
     Appellees,

OKLAHOMA ATTORNEYS
MUTUAL INSURANCE COMPANY,

     Defendant-Appellee,

RIGGS, ABNEY, NEAL, TURPEN,
ORBISON, & LEWIS, INC.,

     Defendant.

Nos. 00-6398 & 01-6155
(D.C. No. CIV-99-370-C)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

\*     The case is unanimously ordered submitted without oral argument according to the parties' request for a decision on the briefs and pursuant to Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata,

                 (continued...)

Before **LUCERO** , **BARRETT** , and **ANDERSON** , Circuit Judges.

This case presents two appeals. In appeal No. 00-6398, plaintiffs Thomas L. Wells and Nanalee F. Wells ("the Wells") appeal the district court's entry of summary judgment against them on their claims of fraud and deceit, civil conspiracy, and interference with their attorney-client relationship. In appeal No. 01-6155, the Wells appeal the jury verdict granting attorney fees to the Wells' former attorneys. These appeals have been consolidated. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**I**

In 1994, Luke Castle and Abbi Parrish Castle ("the Castles") sued the Wells in an Oklahoma state court for fraudulently inducing them to enter into an oral contract. The case resulted in a judgment in the Castles' favor for $330,000 in actual damages and $500,000 in punitive damages. Defendant Phillip W. Redwine was engaged to represent the Wells in the Castle litigation and he supervised the attorneys from his firm who conducted the trial. Shortly after the unexpected verdict was entered against the Wells, they met with Redwine. When

*(...continued)
and collateral estoppel. The Court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

questioned in his deposition, Mr. Wells alleges that the following conversation transpired between himself and Redwine:

> Q (to Mr. Wells):  Well, what did you tell [Redwine]?  What did he say to you right after the trial, in his office?
>
> A:  He called Nanny and I into his office and had us sit down.  And he told us – he said, "I want you to look me straight in the eye."  And he proceeded to tell us that – he says, "I personally guarantee you that you won't lose a thing.  And besides that, I have a good insurance policy."
>
> Q:  Is that all he said?
>
> A:  And then he said – after we got up and he shook our hands, he said, "Don't worry about a thing.  I'll take care of everything," and sent us back to Minnesota.
>
> Q:  This meeting would have taken place when, do you say?
>
> A.  This would have taken place on, I believe the 14th.
>
> Q:  Of October 1996?
>
> A:  Yes.

(2 Appellants' App. at 667.)

These Redwine remarks are interpreted by the Wells as a promise to pay the Castle judgment, either personally or by a claim to his professional malpractice insurer—defendant Oklahoma Attorneys Mutual Insurance Company ("OAMIC"). Redwine has characterized this conversation as his attempt "to reassure them that [he and his firm] were going to do everything possible to protect them."  (2 Appellants' App. at 678.)

Redwine appealed the Castle judgment to the Oklahoma Supreme Court; however, the Wells were not able to post a bond to stay the Castles' collection efforts pending appeal. Because the Castles were persistent in their efforts to collect their judgment and ultimately instituted collection procedures, the Wells filed for Chapter 11 bankruptcy. They hired defendant D. Benham Kirk, Jr. to represent them in the bankruptcy proceedings. [1] The Oklahoma Supreme Court entered a stay of the Castle appeal based on the bankruptcy court's automatic stay. Redwine and Kirk viewed the stay as beneficial to the Wells because it permitted them to pursue their homestead exemption claims to protect their property from the Castles' collection efforts upon the eventual lifting of the bankruptcy stay. In addition, while the stay of the appeal was in effect, Redwine and Kirk intended to litigate, within the bankruptcy proceedings, their assertion that the punitive-damages judgment was dischargeable in bankruptcy. Before that happened, however, the United States Supreme Court issued an opinion that Redwine and Kirk thought resolved the punitive-damages challenge adversely to the Wells.

At a subsequent bankruptcy court settlement conference, the Wells agreed to pay the Castles $500,000 as full settlement of their judgment. As part of the settlement, the Castles agreed to assign their interests in the state appeal to a

---

[1] Kirk subsequently joined the law firm of Riggs, Abney, Neal, Turpen, Orbison & Lewis, Inc., which was named as a defendant in this lawsuit, but was dismissed by stipulation prior to this appeal.

corporation owned by Mr. Wells. Having previously filed a state-court malpractice suit against Redwine for his firm's representation of them in the Castle litigation, the Wells assert that the assignment of their interests in the state appeal was adverse to them because its sole purpose was to protect Redwine from their pending malpractice claim. However, Redwine and Kirk maintain that this assignment was necessary to prevent the dismissal of the malpractice suit. Without the state-court appeal, OAMIC would defend the malpractice suit by arguing that Redwine was deprived of an opportunity to win the appeal. Ultimately the Castle appeal was dismissed.

Instead of proceeding with the malpractice action, the Wells brought this federal lawsuit alleging that Redwine is liable to them for breach of contract, fraud and deceit, civil conspiracy, and intentional infliction of emotional distress, but not for professional malpractice or negligence. This federal action also included claims against Kirk and OAMIC, which are explained below. Redwine and Kirk each filed a counterclaim for attorney's fees for professional services rendered in the Castle and bankruptcy litigation.

Summary judgment was entered in favor of all defendants on the Wells' claims by the district court. A jury decided the counterclaims for attorney fees, and a verdict was returned in Redwine's favor for $96,867.26, and another in Kirk's favor for $8,811.26. After judgments were entered on the verdicts,

Redwine requested and was granted as a prevailing party, $13,970 for attorney fees incurred in litigating his counterclaim.

## II

On their claims against Redwine, Kirk, and OAMIC for fraud and deceit, civil conspiracy, and interference with their attorney-client relationship, the Wells appeal the district court's grant of summary judgment. All other claims are deemed abandoned because they were not briefed. See Abercrombie v. City of Catoosa , 896 F.2d 1228, 1231 (10th Cir. 1990) (issue listed, but not argued in brief, is waived). Moreover, this Court will not search the record for evidence to support allegations contained in the appellate briefs. Gross v. Burggraf Constr. Co. , 53 F.3d 1531, 1546 (10th Cir. 1995).

We review de novo the district court's grant of summary judgment, viewing the record in the light most favorable to the party opposing summary judgment. McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1128 (10th Cir. 1998). Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c). Summary judgment will be granted to defendant if plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322.

"Although we are required to view the evidence in the light most favorable to the nonmoving party, we must not refrain from examining the evidence altogether." Heartsprings, Inc. v. Heartspring, Inc., 143 F.3d 550, 557 (10th Cir. 1998).

There is no dispute that Oklahoma state law controls. In this case, based on diversity, we must reach the same conclusion the state's highest court would reach. Blanke v. Alexander, 152 F.3d 1224, 1228 (10th Cir. 1998). In applying Oklahoma law, we afford no deference to the district court's legal rulings. Salve Regina College v. Russell, 499 U.S. 225, 238-39 (1991).

**A**

Fraud-and-deceit claims were brought against both Redwine [2] and Kirk by the Wells. To maintain a claim of fraud, a plaintiff must produce evidence of five elements: (1) a material representation that was false, (2) the statement was made by a defendant who knew it was false, (3) the defendant intended the plaintiff to rely on the representation, (4) the plaintiff acted upon the representation, and (5) the plaintiff suffered a detriment as a result. Silk v. Phillips Petroleum Co., 760

---

[2] The Wells assert that the district court did not resolve their claim against Redwine for fraud and deceit because it premised the dismissal of the fraud claim on the Wells' statement that they did not pursue a claim of negligence or legal malpractice against Redwine. Because the record supports summary judgment in favor of Redwine on the claim for fraud and deceit we affirm the district court's decision, albeit for different reasons. See Mallinson-Montague v. Pocrnick, 224 F.3d 1224, 1233 (10th Cir. 2000) ("[T]his court can affirm the district court for any reason that finds support in the record.").

P.2d 174, 176-77 (Okla. 1988). Mere allegations will not withstand summary judgment. Id. at 177. Facts must be demonstrated "from which an <u>irresistible</u> <u>deduction of fraud reasonably arises</u>." Id. (quotation omitted).

A cause of action for deceit requires evidence of a willful deceit, intent that the other party alter his position, and injury to the other party. Okla. Stat. tit. 76, § 2. "Deceit" is defined as any of the following:

1. The suggestion, as a fact, of that which is not true by one who does not believe it to be true.

2. The assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true.

3. The suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact; or

4. A promise, made without any intention of performing.

Id. § 3.

Three allegations form the basis of the Wells' fraud-and-deceit claims against Redwine. First, Redwine lied when he told the Wells that he would be responsible for paying the Castle judgment. Second, Redwine permitted the appeal from the Castle judgment to be stayed for about one year during the time the bankruptcy case was pending, and to be continued after the Castle settlement, even though the appeal was moot, thereby denying the Wells of any benefit from

the appeal. [3] In addition, Redwine was deceitful in not telling the Wells the reason the appeal was stayed for a year or the reason for continuing the appeal after the settlement. Third, Redwine told the Wells that he would request his malpractice insurer, OAMIC, to consider paying a claim made by the Wells, thereby inducing them to settle with the Castles on the assumption that OAMIC would pay the settlement amount. Also, Redwine failed to disclose the fact that OAMIC had not committed to contributing to any settlement with the Castles.

As indicated above, to prevail on a claim for fraud and/or deceit, a plaintiff must suffer damages as a result. In this effort to establish damages, the Wells claim they (1) had to pay $500,000 to settle the Castle judgment, (2) incurred a $100,000 attorney-fee obligation in the Castle litigation, and (3) continued the Castle appeal even after settling with the Castles. Mr. Wells admitted, however, that he sustained no damages as a result of the continuation of the appeal. The attorney fees incurred in the Castle litigation predated any alleged misrepresentations made by Redwine, so the Wells could not have relied on misrepresentations in incurring those fees.

---

[3] The Wells also claim that by failing to have the stay of appeal lifted, Redwine improperly ensured that the Castle judgment was not affirmed on appeal. According to them, this resulted in the Castles accepting a $500,000 settlement, which was less than their $830,000 judgment. They allege that Redwine's motive was to keep the exposure on the Castle matter within his insurance policy's limit of $1,000,000. However, this argument is meritless because the judgment of $830,000 was within the $1,000,000 policy limit.

Despite their claim to the contrary, the Wells admit, and the record shows, that Redwine contacted OAMIC to request it to consider a legal malpractice claim against him by the Wells. (1 Appellants' App. at 294-96.) As for the Wells' claim that Redwine failed to tell them that OAMIC had not agreed to pay any of the Castle settlement, the record does not contain evidence that Redwine led the Wells to think that OAMIC had agreed to pay anything.

Ultimately, this claim rests on the Wells' allegation that Redwine's statements—that they would not lose a thing and he would take care of everything—meant that he intended to pay the Castle judgment or have his malpractice insurer pay it. We conclude that Redwine's statements cannot provide the necessary clear and convincing evidence from which an irreducible deduction of fraud reasonably arises. The statements are only a scintilla of evidence, which cannot defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Moreover, Oklahoma law precludes the Wells from seeking payment of the Castle judgment by Redwine. "It would be contrary to public policy to allow [the Wells] to benefit from their own confirmed fraud and recover a monetary judgment from [Redwine] to indemnify them for their

fraud." Heyman v. Gable, Gotwals, Mock, Schwabe, Kihle, Gaberino, 994 P.2d 92, 94 (Okla. Ct. App. 1999).

Similar to the fraud-and-deceit claims against Redwine, the Wells' fraud-and-deceit claims against Kirk are based on four allegations. First, Kirk permitted the Castle appeal to be stayed during the bankruptcy case and then pursued it even after the settlement. Second, Kirk was deceitful in not telling the Wells the reason the appeal was stayed for a year or the reason for continuing the appeal after the settlement. Third, Kirk discussed how to accomplish proceeding with the Castle appeal after the Castles agreed to the settlement with the attorneys for OAMIC. Fourth, Kirk failed to disclose the fact that OAMIC had not committed to contributing to any settlement with the Castles, instead he encouraged the Wells to settle by letting them think that OAMIC would pay any settlement reached.

Kirk's fraud and deceit allegedly caused the Wells $500,000 in damages—the amount of the Castle settlement—because by continuing the Castle appeal, Kirk was able to defeat their malpractice claim against Redwine. (1 Appellants' App. at 33 (first amended complaint).) Yet they have not produced any evidence either (1) that Kirk made any material misrepresentations, false statements, or promises he did not intend to keep, or (2) that they relied on any misrepresentation to their detriment. To the contrary, the materials submitted on

-11-

appeal demonstrate that Kirk pursued the Castle appeal for the very purpose of preserving the Wells' malpractice claim against Redwine. Accordingly, we hold that summary judgment in Kirk's favor on this claim was correct.

**B**

Alleging that Kirk's efforts to pursue the Castle appeal after settlement were the result of OAMIC's demands that the appeal continue, the Wells claim that OAMIC unlawfully interfered with their attorney-client relationship. We assume they refer to their professional relationship with Kirk, since their appellate brief describes the factual basis for this claim as letters written after they discharged Redwine and sued him in state court for legal malpractice.

A claim for tortious interference with an attorney-client contractual relationship is based on three elements: (1) there existed a "business or contractual right that was interfered with by [OAMIC]; (2) such interference was malicious and wrongful, and neither justified, privileged, nor excusable; and (3) damages were proximately caused by such interference." Thompson v. Box, 889 P.2d 1282, 1284 (Okla. Ct. App. 1994). This claim was not argued in the appellate brief, but was mentioned only in passing. We have considered it, however, and we conclude that the Wells have not made a prima facie case. There is no evidence that OAMIC interfered with their attorney-client relationship with Kirk, let alone evidence that OAMIC, through its attorneys, engaged in

-12-

malicious or wrongful activity. As discussed relative to the Wells' other complaints that continuing the Castle appeal was wrongful, they have alleged no damages as a result. Therefore, we affirm the district court's grant of summary judgment in OAMIC's favor.

## C

Arguing that the district court erred in granting summary judgment against them on their claims of civil conspiracy, the Wells allege two conspiracies. First they allege Redwine and Kirk denied the Wells the opportunity to benefit from the reversal of the Castle judgment by permitting the stay to remain in effect for about one year; second they claim Redwine, Kirk, and OAMIC perpetuated the Castle appeal even after the appeal became moot due to the settlement with the Castles.

> A civil conspiracy consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means. Unlike its criminal counterpart, civil conspiracy itself does not create liability. To be liable the conspirators must pursue an independently unlawful purpose or use an independently unlawful means. There can be no civil conspiracy where the act complained of and the means employed are lawful.

Brock v. Thompson, 948 P.2d 279, 294 (Okla. 1997) (footnotes omitted).

Because there is no claim that staying or pursuing the Castle appeal after settlement was illegal, and in not identifying an unlawful purpose pursued by the alleged co-conspirators or an unlawful means employed by them, the Wells have

-13-

not alleged a civil conspiracy.  We do not delve into the reasons for the course of action taken by Redwine, Kirk, and OAMIC to determine if it was appropriate, or even reasonable, because the Wells have made it quite clear that their claims in this case do not include legal malpractice.  Accordingly, summary judgment was proper.

### III

Challenging the judgments in favor of Redwine and Kirk on their counterclaims for professional services rendered and the additional attorney fees awarded to Redwine as a prevailing party, [4] the Wells argue that the district court committed reversible error by refusing to permit them to defend against Redwine's counterclaim by showing his fraud and deceit.  They also claim Redwine and Kirk waived collection of their respective fees or, by failing to send bills and/or talk about the bills with the Wells, they are estopped from collecting the fees.  Therefore, the Wells argue they were entitled to a judgment as a matter of law, pursuant to Fed. R. Civ. P. 50(a).  They maintain that reversal of the counterclaim judgments will also require reversal of  Redwine's additional award based on his status as a prevailing party.

---

[4]     Kirk did not request similar fees.  Redwine's and Kirk's counterclaims were tried before a jury.  Jury verdicts were returned in favor of Redwine and Kirk as stated above.  The additional attorney-fee award to Redwine was entered by the district court, pursuant to Okla. Stat. tit. 12, § 936.

We review the district court's rulings on the admission of evidence for an abuse of discretion. <u>Black v. M&W Gear Co.</u>, 269 F.3d 1220, 1227 (10th Cir. 2001). We review an order disposing of a motion for judgment as a matter of law by reviewing all of the evidence in the record and drawing all reasonable inferences in favor of the nonmoving party. <u>Stewart v. Adolph Coors Co.</u>, 217 F.3d 1285, 1288 (10th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1077 (2001).

We are unable to review these claims because the Wells have not provided a record of the jury trial proceedings. Appendices provided by each of the appellees similarly do not contain the necessary trial record; the burden is on appellants to provide the appellate court with a suitable record on appeal. <u>See</u> Fed. R. App. P. 10(b)(2). Where the evidentiary record before us is insufficient to permit assessment of appellants' claims of error, we must affirm. <u>Deines v. Vermeer Mfg. Co.</u>, 969 F.2d 977, 979-80 (10th Cir. 1992).

## IV

Defendants' motions to dismiss appeal 00-6398 are denied as moot. The judgment of the district court is **AFFIRMED**.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge

-15-